J-S54042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADRIAN BAUTISTA VELASCO | : | |
| | : | |
| Appellant | : | No. 423 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 14, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000423-2017

BEFORE: BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED NOVEMBER 27, 2019**

Appellant, Adrian Bautisa Velasco, appeals from the November 14, 2018 Judgment of Sentence entered in the Franklin County Court of Common Pleas following his jury conviction of one count each of Kidnap to Facilitate a Felony, Rape by Forcible Compulsion, Burglary, Sexual Assault, Criminal Trespass, False Imprisonment, Simple Assault, and Indecent Assault by Forcible Compulsion.[1] Appellant challenges the denial of his suppression motion, the admission of certain testimony, and the sufficiency and weight of the evidence. After careful review, we affirm.

The relevant facts and procedural history are as follows. The victim reported that, in the early morning hours of September 28, 2013, a man entered her home around 3:00 AM, restrained her by her wrists, and raped

---

[1] 18 Pa.C.S. §§ 2901(a)(2), 3121(a)(1), 3502(a)(1), 3124.1, 3503(a)(1)(ii), 2903(a), 2701(a)(1), and 3126(a)(2), respectively.

her. Following the rape, a sexual assault nurse examiner interviewed the victim and completed a sexual assault exam kit, which included DNA swabs.

In the course of investigating the home invasion and rape, Trooper Jason Cachara spoke with Appellant in October 2013. Three years later, in November 2016, after obtaining Appellant's written consent on a form written in Spanish, Trooper Cachara obtained a DNA sample from Appellant.[2] The DNA in the sample matched DNA found on the victim. Police arrested Appellant and charged him with the above crimes.[3]

On June 16, 2017, Appellant filed a Motion to Suppress his DNA sample, challenging the voluntary, intelligent, and knowing nature of his consent to provide the sample. In his Motion, Appellant averred that his inability to speak and understand Spanish[4] prevented him from consenting knowingly and intelligently to the search of his person and the collection of his DNA.

---

[2] Appellant signed a Spanish language consent form. N.T., 10/5/17, at 11.

[3] Police also charged Appellant with Unlawful Restraint, 18 Pa.C.S. § 2902(a)(1). The jury acquitted him of that charge.

[4] Appellant alleges that he does not speak and understand Spanish, but rather he speaks and understands Mixteco, a language spoken by indigenous Mesoamerican people in Mexico. N.T., 10/5/17, at 58. Mixteco is not a cognate language to Spanish. *Id.*

On October 5, 2017, the court held a hearing on Appellant's Motion to Suppress. Officer Cachara[5] and Sila Alegret-Bartel, a native Spanish speaker and the owner of a translation interpretation company, testified for the Commonwealth.[6] The Commonwealth's witnesses offered testimony to support the Commonwealth's position that Appellant spoke and understood Spanish proficiently, thus rendering his consent to the DNA collection knowing and intelligent.

In particular, Trooper Cachara testified that when he initially spoke with Appellant in 2013, he spoke with him in Spanish. N.T., 10/5/17, at 8. He testified that he and Appellant spoke for approximately 45 minutes and it appeared to him that Appellant understood him. *Id.* at 8-9. Trooper Cachara then testified that he spoke with Appellant, again in Spanish, in November 2016, and explained to Appellant that he wanted to obtain Appellant's consent to collect a DNA sample.[7] *Id.* at 10-11. Trooper Cachara testified that Appellant agreed to permit Trooper Cachara to swab his mouth for a DNA sample and that Trooper Cachara then obtained a Spanish language consent form. *Id.* at 11. Trooper Cachara testified that Appellant never indicated that

_____

[5] Officer Cachara testified that he earned an undergraduate degree from Indiana University of Pennsylvania, where he majored in Criminology and minored in Spanish. N.T., 10/5/17, at 6.

[6] Over Appellant's objection, the court qualified Ms. Alegret-Bartel as an expert in translation and interpretation. N.T., 10/5/17, at 47.

[7] Pennsylvania State Police Trooper Jeffrey Baney was also present for this conversation.

he did not understand what Trooper Cachara was saying. *Id.* at 11-12. Trooper Cachara testified that he asked Appellant if he read and wrote Spanish because, if Appellant did not, Trooper Cachara could explain the consent form or read it to Appellant. *Id.* at 12. Appellant told Trooper Cachara that he did understand written Spanish, took the form, and read it. *Id.* Trooper Cachara testified that, while reading the form, Appellant commented that it seemed as though the form indicated that Trooper Cachara needed either a warrant or Appellant's permission to collect the DNA sample. *Id.* at 12. Trooper Cachara confirmed that that was, in fact, the case, and that he was seeking Appellant's voluntary consent for a DNA sample. *Id.* He testified that, throughout the interaction, based on the course of their conversation, it appeared that Appellant understood him.[8] *Id.* at 12-13, 15. He further testified that, at times, Appellant's rate of speech was too fast for Trooper Cachara to understand Appellant. *Id.* at 33.

Ms. Alegret-Bartel testified that she listened to approximately 17 phone calls made by Appellant while in jail. *Id.* at 48-49. She testified that, in her opinion, while on the phone, Appellant was speaking Spanish and a non-Spanish language that she didn't understand. *Id.* at 49. She testified that Appellant also spoke English that she could understand "perfectly." *Id.* at 50.

_____

[8] Trooper Cachara explained that "[t]he two times that I spoke with [Appellant] there were times when we had to redefine things or use different words to get our points across, but as far as theme and understanding, I have no reason to believe we didn't understand each other." N.T., 10/5/17, at 31-32. Trooper Cachara was clear that, at all relevant times, he and Appellant spoke Spanish with each other. *See*, *e.g.*, *id.* at 33-34.

She testified within a reasonable degree of professional certainty that Appellant, whom she heard speaking "correct and proper Spanish," speaks Spanish fluently. *Id.* at 51.

In support of his Motion, Appellant offered the testimony of Josephine Souders, a certified court interpreter.[9] Ms. Souders testified that she initially met with Appellant to explain his preliminary hearing to him and that she "probably heard [Appellant] speak two sentences and I knew that Spanish wasn't his first language." *Id.* at 57, 59. She testified that the more she spoke with Appellant, the more concerned she was that he did not speak Spanish. *Id.* at 58. Ms. Souders testified that Appellant told her that he had only an elementary school-level education and that his education took place in Mixteco. *Id.* at 59. She testified that she determined that his first language was Mixteco. *Id.* at 58. She testified that, in her expert opinion, Appellant did not understand the legal system sufficiently in Spanish. *Id.* at 59. Ms. Souders also reviewed the phone calls that Ms. Alegret-Bartel reviewed; however, Ms. Souders reached a conclusion different from that of Ms. Alegret-Bartel.

In particular, Ms. Souders testified that she believed Appellant lacked the Spanish vocabulary to express his thoughts and that he did not comprehend his wife, who spoke only Spanish to Appellant in the relevant phone calls, when she communicated to him in long sentences. *Id.* at 60-61,

---

[9] The court qualified Ms. Souders as an expert witness in Spanish interpretation. N.T., 10/5/17, at 56-57.

65. She testified that "every time [Appellant's wife] said something she had to repeat herself at least twice." *Id.* at 66. She testified that, in her opinion, Appellant does not understand Spanish sufficiently for the purposes of these legal proceedings, or for the concepts of DNA, consent, or knowing and voluntary waiver. *Id.* at 64. She also testified that Appellant spoke Mixteco on other phone calls, and that, based only on the speed that Appellant spoke Mixteco, Appellant was "so much more fluent [in Mixteco] than compared to the Spanish where he had to stop and think and ask to repeat what he [had been] told." *Id.* at 66, 68.

Following the hearing, the parties submitted Briefs to the court in support of their positions. On January 8, 2018, the court denied Appellant's Motion to Suppress, concluding that he had knowingly and intelligently consented to the search of his person for the purposes of collecting his DNA. In making its decision, the court found "particularly illuminating" Trooper Cachara's uncontested testimony that Appellant indicated that he could read and understand the Spanish-language consent form and that Appellant "formulated specific questions concerning whether a warrant was required for the Troopers to obtain [the sample]" and that Appellant understood Trooper Cachara's answer to Appellant's question. Trial Ct. Op., 1/8/18, at 20. The court also found Trooper Cachara's testimony—that, at times, Appellant's rate of speech was too fast for Trooper Cachara to understand Appellant— "significant, in that it suggests a level of comprehension and proficiency in the Spanish language on the part of [Appellant]." *Id.* at 20-21. The court

emphasized that Appellant did not contest Trooper Cachara's testimony describing his interaction with Appellant. *Id.* at 21. The court noted that it was not persuaded by Ms. Souder's testimony regarding the court proceedings **subsequent to** the police interaction in question as proof of Appellant's voluntary consent to the collection of his DNA. *Id.*

Appellant proceeded to a jury trial. Relevant to the instant appeal, the Commonwealth presented the testimony of Detective David Rush, a former Pennsylvania State Police Trooper.[10] Detective Rush testified, over Appellant's objection, that he investigated many sex crimes during his tenure as a State Trooper and that, "in his experience as an investigator interviewing persons who are alleged to be victims of sexual assault," victims do not "have a crystal clear recall" about the events they are reporting. N.T., 10/15/18, at 86-87. He further explained that "[i]t's quite a traumatic event and trauma can induce a lot of things that take place with the memory[.]" *Id.* at 87.

Appellant testified on his own behalf. Appellant testified that, at the victim's initiation, he and the victim had had consensual sex on the night of the alleged rape. N.T., 10/16/18, at 129-30. Relevantly, Appellant attempted to testify to his belief that the victim had falsely claimed that he raped her to

---

[10] Detective Rush testified that he had been assigned to investigate the victim's alleged rape. Detective Rush is now retired from the Pennsylvania State Police after 22 years of service.

benefit her immigration status.[11] *Id.* at 132. The Commonwealth objected to this testimony as speculative and without basis. *Id.* at 132-33. After a sidebar conference, the court sustained the objection. *Id.* at 133.

The jury convicted Appellant of the crimes enumerated above. On November 14, 2018, the court sentenced Appellant to an aggregate term of 10½ to 57 years' incarceration.

On December 26, 2018, Appellant filed a Post-Sentence Motion in which he challenged the weight and sufficiency of the Commonwealth's evidence.[12] The trial court denied Appellant's Motion on February 11, 2019.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Should [] Appellant's convictions and sentences be vacated because the trial court erred in allowing, over [] Appellant's objection, David Rush to provide what amounted to expert testimony and opinion regarding memory and mental recall?

2. Should [] Appellant's convictions and sentences be vacated because the trial court erred in sustaining a Commonwealth objection[,] which prevented Appellant from testifying to his belief that the alleged victim made false claims of being raped to benefit her for immigration purposes?

---

[11] The victim had previously testified that she is an "illegal alien." N.T., 10/15/18, at 115. She further testified that she had not filed any immigration paperwork to stay in the country following the attack and her immigration status remains the same, explaining that "[t]hat's not what I'm trying to do." *Id.*

[12] The court had granted Appellant's request for an extension of time in which to file the Post-Trial Motion.

3. Should [] Appellant's convictions and sentences be vacated because the evidence produced at trial was insufficient to support each of Appellant's convictions and the trial court erred in its order issued February 11, 2019[] denying [] Appellant's Post-Sentence Motion[,] which raised this issue?

4. Should [] Appellant's convictions and sentences be vacated because the jury's verdicts with regard to each of [] Appellant's convictions were against the weight of the evidence and the trial court erred in its order issued February 11, 2019[,] denying [] Appellant's Post-Sentence Motion[]?

5. Should [] Appellant's convictions and sentences be vacated because the trial court erred in denying [] Appellant's Motion to Suppress [] where the Commonwealth failed to meet its burden of establishing a voluntary consent search regarding the collection of a DNA sample from [] Appellant?

Appellant's Brief at 14 (citations to the Notes of Testimony omitted).

In his first issue, Appellant claims that the trial court erred in permitting Detective David Rush, whom the Commonwealth did not offer as an expert witness, to provide "expert testimony and opinion" regarding memory and mental recall. Appellant's Brief at 29. In particular, Appellant objected to Detective Rush responding in the affirmative to the following question posed by the Commonwealth: "In your experience as a criminal investigator investigating matters of sex crimes, interviewing persons who are victims or alleged to be victims of sex crimes, is it your experience that these persons have crystal clear recall about the events that they are reporting to you about having been assaulted?" *See* N.T., 10/15/18, at 87. Appellant argues that Detective Rush's affirmative response "met no factors for opinion testimony as set forth by [Pa.R.E.] 701 and specifically alleges that it "was clearly based

upon scientific and specialized knowledge contemplated by Rule 702." Appellant's Brief at 30.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

The Pennsylvania Rules of Evidence limit lay witness testimony in the form of an opinion to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Rule 701 contemplates admission of lay opinions rationally based on personal knowledge that are helpful to the factfinder. *Commonwealth v. Berry*, 172 A.3d 1, 3-4. (Pa. Super. 2017)

In contrast, when a witness's testimony is based upon "scientific, technical, or other specialized knowledge [] beyond that possessed by the

average layperson," the witness must be qualified as an expert "by knowledge, skill, experience, training or education." Pa.R.E. 702(a).

The trial court concluded that the "Commonwealth's question in this instance sought information directly within the scope of Detective Rush's direct experience interviewing victims of crime" and, thus did not constitute expert testimony. Trial Ct. Op., 4/16/19, at 9. Our review of the Notes of Testimony confirms that Detective Rush did not offer the testimony to which Appellant objects as an expert. Rather, Detective Rush's testimony constituted lay opinion testimony rationally based on his personal knowledge obtained as an experienced interviewer of sexual assault victims. As such, the trial court did not abuse its discretion in overruling Appellant's objection to this testimony and Appellant is not entitled to relief on this claim.

Appellant's second issue involves his attempt to testify that he believed that the victim was lying about Appellant having raped her because she was trying to obtain special immigration status. Appellant's Brief at 31-33. In other words, Appellant wanted to testify about his theory that the victim had a motive to falsely claim that Appellant had raped her because she is undocumented, but if could she prove that she was a rape victim, she could remain the United States.[13] The trial court sustained the Commonwealth's objection to Appellant's testimony about this theory. Appellant argues that

---

[13] Appellant claims, without citation to any statute or other law, that "victims of crimes can obtain special immigration protections that may be preferable to remaining illegal and undetected by immigration authorities." Appellant's Brief at 33.

his testimony was relevant because it made the issue of whether the victim had reason to fabricate her rape more or less probable. *Id.* at 32-33.

"The right of an accused to testify in his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by the [United States and] Pennsylvania Constitution[s]." *Commonwealth v. Jermyn*, 533 A.2d 74, 78 (Pa. 1987) (citation omitted). *See also Rock v. Arkansas*, 483 U.S. 43, 55 (1987) (discussing the right of a defendant to testify). It is not, however, an unfettered right; rather, it is limited by "other legitimate interests in the criminal trial process." *Rock*, 483 U.S. at 55 (1987) (citation omitted). "[T]he right to be heard is [] circumscribed by the rules of evidence." *Commonweallth v. Stollar*, 84 A.3d 635, 647 (Pa. 2014) (citing *Jermyn*, 533 A.2d at 78). "In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." *Rock*, 483 U.S. at 56.

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable then it would be without the evidence[.]" Pa.R.E. 401. A court may exclude relevant evidence where its probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403.

The trial court properly rejected Appellant's theory about the victim's alleged motive to lie. The victim testified that, since her rape, she has not filed any paperwork to stay in the country or to change her immigration status. N.T., 10/15/18, at 115. Thus, there is no factual basis for Appellant's theory

that the victim fabricated the rape allegations in order to obtain special immigration status. *See Commonwealth v. Fernsler*, 715 A.2d 435, 440 (Pa. Super. 1998) (explaining that "**evidence** tending to show that a victim had a motive to lie or fabricate sex assault charges against an accused is relevant because of its exculpatory nature[.]") (emphasis added).

In his third issue, Appellant challenges the sufficiency of the evidence in support of his convictions. Appellant's argument is, however, woefully underdeveloped. Appellant has cited only to boilerplate authority and has not identified with any specificity which of his eight convictions he purports to challenge. Moreover, Appellant has failed to set forth the elements of each of the crimes he alleges the Commonwealth failed to prove, and does not cite or analyze any controlling authority in support of his particular claims. Appellant's failure to develop his issues have hampered this Court's ability to conduct meaningful appellate review. We, thus, conclude that Appellant has waived his sufficiency of evidence claims by failing to develop them in his appellate Brief. *See*, *e.g.*, *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (concluding claim of insufficient evidence for multiple convictions was waived because it was, *inter alia*, underdeveloped, and the appellant failed to argue which specific element of the crime was not met); *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted) (where "defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); *see also* Pa.R.A.P. 2101 (providing that where the defects in

- 13 -

an appellant's brief are substantial, this Court may quash or dismiss the appeal).

In his fourth issue, Appellant challenges the weight given by the jury to the Commonwealth's evidence. Appellant's Brief at 35. In support of this claim, Appellant recites testimony that was arguably favorable to him and baldly claims that "the victim's testimony and reports, coupled with [] Appellant's characteristics and claim of consensual sex, places [the victim's] claims against the weight of the evidence." *Id.*

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the

findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

In this issue, Appellant essentially impugns the jury's finding that his claim that he had had consensual sex with the victim was not credible and

- 15 -

asks this Court to substitute our judgment for that of the trier of fact. This we cannot and will not do. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. We discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Accordingly, Appellant is not entitled to relief on his weight claim.

In his final issue, Appellant claims the trial court erred in denying his Motion to Suppress, contending that he did not knowingly and intelligently consent to the collection of his DNA. Appellant's Brief at 36-37.

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)). This Court will not disturb a suppression court's credibility determination absent a clear and manifest error. *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa. Super. 1993).

Importantly, "[o]nce a [M]otion to [S]uppress [E]vidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). To

effectuate these protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures. *Commonwealth v. Arter*, 151 A.3d 149, 154 (Pa. 2016).

If a defendant voluntarily consents, the ensuing search is reasonable and the police have not violated the defendant's constitutional rights. *Commonwealth v. Quiles*, 166 A.3d 387, 390-91 (Pa. Super. 2017). "To be considered valid, the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbourne—under the totality of the circumstances." *Id.* at 391 (citations and internal quotation marks omitted).

"[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account[. However,] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Commonwealth v. Powell*, 994 A.2d 1096, 1102 (Pa. Super. 2010) (citation omitted).

Appellant claims that the Commonwealth failed to offer sufficient evidence at the suppression hearing that Trooper Cachara's was able to communicate legal concepts in Spanish so as to satisfy "the requirements of knowing and voluntary waiver." Appellant's Brief at 37. Appellant avers that, "[n]othing presented at the suppression hearing indicated that [] Appellant had an understanding of investigative proceedings or his constitutional rights or that he had any idea that he was free to leave or decline the DNA sample request." *Id.* at 38.

- 17 -

While Appellant frames his issue as a sufficiency challenge, it is actually a challenge to the weight of the evidence presented at the suppression hearing. The testimony of Trooper Cachara directly contradicts Appellant's assertion. Specifically, Trooper Cachara testified, *inter alia*, that Appellant read the Spanish-language consent to search form before he correctly observed and remarked that the form indicated that the police needed either a warrant or Appellant's consent to collect his DNA. The trial court found this and other testimony offered by Trooper Cachara, as well as the testimony offered by Ms. Alegret-Bartel to be credible and chose not to credit Ms. Souder's testimony. Following our review of the totality of the Notes of Testimony from the suppression hearing, we discern no clear or manifest error by the trial court. Accordingly, Appellant's claim does not merit relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019