J-A14012-22

2022 PA Super 162

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
                             :
            v.               :
                             :
                             :
                             :
ERIC WARREN BIEBER           :
                             :
            Appellant        :  No. 1630 MDA 2021

Appeal from the Judgment of Sentence Entered August 27, 2021
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000331-2017

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.:         **FILED: SEPTEMBER 22, 2022**

Appellant, Eric Warren Bieber, appeals from the judgment of sentence of time-served[1] to 23 months' incarceration, imposed after a jury convicted him of carrying a firearm without a license, 18 Pa.C.S. § 6106(a).  After careful review, we vacate Appellant's judgment of sentence and remand for a new trial.

Appellant was initially "charged in a 21-count information with four counts of aggravated assault, four counts of terroristic threats, four counts of simple assault, four counts of reckless endearment, four counts of harassment[,] and one count of carrying firearms without a license."  ***Commonwealth v. Bieber***, No. 904 MDA 2019, unpublished memorandum

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant was credited with 176 days that he served in pre-trial detention. Sentencing Order, 8/27/21, at 1.

at 1-2 (Pa. Super. filed July 23, 2020). At his first trial in 2019, Appellant acted *pro se*. *Id.* at 5. "The jury found Appellant not guilty of all felony and misdemeanor charges except the firearms charge. The judge found Appellant guilty of the four summary offense charges of harassment." *Id.* On appeal, Appellant successfully argued that he was entitled to a new trial due to a defective waiver-of-counsel colloquy. *Id.* at 12.

At his second trial held on June 2, 2021,[2] the subject of the instant appeal, Appellant was represented by counsel, Peter T. Campana, Esq. The sole charge before the jury was Appellant's Section 6106 offense. The primary issue at trial was the applicability of the exception to Section 6106 violations set forth in Section 6106(b)(9) (hereinafter, the "Sportsman's Permit Exception"). At trial, the Commonwealth's evidence established that, on August 2, 2017, Appellant was driving with his then-girlfriend, Billie Jo Caffo ("Caffo"), as a passenger when police effectuated a vehicle stop.[3] N.T. Trial, 6/2/21, at 69, 76. Police removed Appellant and Caffo from the vehicle, at which time they observed a handgun in plain view on the floor on the driver's side of the car. *Id.* at 76-77. Police also discovered in plain view a holster, a magazine containing eight rounds of ammunition (not inside the handgun),

_____

[2] We note that parts of the transcript mistakenly report the trial as having occurred on April 12, 2021.

[3] The basis for the stop was related to the offenses for which Appellant was acquitted at his first trial.

and one loose round. ***Id.*** at 78, 83. The handgun did not have any rounds in the chamber. ***Id.*** at 93.

Caffo initially told police that the gun was not loaded, a statement she later claimed was a lie when she testified at trial. ***Id.*** at 72. At trial, however, she indicated that when the police stopped Appellant's vehicle, she heard several clicks and the sound of something hitting the floor. ***Id.*** at 70. Caffo also stated that Appellant then instructed her not to tell police that the gun had been loaded. ***Id.***

Sergeant Craig Wharton of the Pennsylvania State Police testified that Appellant once possessed a license to carry a concealed firearm (hereinafter "carry-concealed permit"), but that it had been revoked in 2014. ***Id.*** at 99. Nevertheless, Sergeant Wharton also indicated that, at the time of the stop, Appellant possessed a Pennsylvania Sportsman's Firearm Permit.[4] ***Id.*** Over Appellant's objection, Sergeant Wharton testified that he did not believe the Sportsman's Permit Exception applied because he surmised no evidence that Appellant "was doing any of the activities" that "a Sportsman's Permit allows him to do." ***Id.*** at 102. Sergeant Andrew Adams of the Westfield Borough Police Department, and Trooper Justin Millard of the Pennsylvania State Police, also provided testimony for the Commonwealth regarding the stop. ***Id.*** at 74-93.

---

[4] ***See*** 18 Pa.C.S. § 6106(c).

Finally, Frank Levindoski, Sheriff of Tioga County, took the stand for the Commonwealth. Sheriff Levindoski administered carry-concealed permits for Tioga County. *Id.* at 108. He testified that citizens who possess carry-concealed permits are allowed to carry firearms concealed on their person, and/or loaded in their vehicle. *Id.* He further stated that, absent a carry-concealed permit, persons are not permitted by law to transport a loaded firearm in their vehicle. *Id.* at 109-10. The bulk of Sheriff Levindoski's remaining testimony, on both direct- and cross-examination, consisted of him reading statutory definitions into the record, and opining as to their meaning in the context of this case, and in particular with respect to his understanding of the 'proper' manner of transporting a firearm in a vehicle under Pennsylvania law. *Id.* at 110-30. Over Appellant's objection, Sheriff Levindoski testified regarding his interpretation of 18 Pa.C.S. § 6106.1, despite the fact that the Commonwealth did not charge Appellant with that offense.

Appellant then testified in his own defense, indicating that on the date of the vehicle stop, he possessed a fishing license, a hunting license, and a sportsman's firearm license, which were collectively admitted into evidence without objection. *Id.* at 131-32. He admitted ownership and possession of the firearm discovered by police. *Id.* at 133. He indicated that, at the time of the stop, he intended to go fishing after he dropped Caffo off at home. *Id.* at 133-34. He further stated that there were fishing poles and a tackle box in

- 4 -

the vehicle, but that police did not search the areas of the car where they were located. *Id.* at 134.

In their closing arguments to the jury, the parties essentially agreed that the Commonwealth had proven the basic elements of a Section 6106 violation, and that the only issue for the jury to decide was whether the Sportsman's Permit Exception applied. Appellant's defense counsel argued that the Sportsman's Permit Exception applied based on Appellant's testimony that he was on his way to fish when his plans were interrupted by the domestic dispute with Caffo that led to the vehicle stop. *Id.* at 147. The Commonwealth argued that the Sportsman's Permit Exception did not apply, inviting the jury to find Appellant's testimony regarding his intent to go fishing as not credible, and further asking them to rely on Sherriff Levindoski's testimony that Appellant was not permitted to have a loaded firearm in his vehicle without a concealed carry license unless he was an officer of the law. *Id.* at 150.

The jury found Appellant guilty of violating Section 6106. On August 20, 2021, the trial court sentenced Appellant as stated above. Appellant filed a timely post-sentence motion on August 30, 2021, seeking, *inter alia*, unitary review of ineffective assistance of counsel ("IAC") claims on direct appeal. The trial court held a hearing on October 29, 2021, to address the post-sentence motion, but it did not conduct fact-finding with respect to Appellant's IAC claims, nor did the court entertain argument on the merits of those claims. By order dated November 19, 2021, the trial court denied the post-sentence

motion, which included the court's reasoning for denying unitary review, and did not address the merit of the IAC claims. *See* Order, 11/19/21, at 1-5.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on February 17, 2022. Appellant now presents the following questions for our review:

[1.] Did the trial court err in denying [Appellant]'s request to waive PCRA[5] review?

[2.] Whether trial counsel was ineffective in failing to object to improper legal opinion testimony by Sheriff Levindoski concerning his belief regarding the definition of a weapon being loaded even if not physically loaded?

[3.] Whether trial counsel was ineffective in failing to object to improper legal opinion testimony by Sheriff Frank Levindoski regarding the proper way to transport a firearm in a vehicle?

[4.] Did the trial court err in declining to grant a new trial where the Commonwealth elicited legal opinion testimony from a Pennsylvania State Police Sergeant concerning his interpretation and the applicability of the Sportsman's Permit?

[5.] Did the trial court err in declining to grant a new trial where the Commonwealth offered testimony from Sheriff Levindoski concerning his legal interpretation of 18 Pa.C.S. § 6106.1 and the prohibitions regarding the carrying of a loaded pistol?

Appellant's Brief at 10.

Appellant's claims are somewhat interrelated. He argues that the Commonwealth elicited inadmissible legal opinion testimony from Sergeant

---

[5] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46.

Wharton and Sheriff Levindoski. In his fourth and fifth issues, Appellant raises claims based upon objections made by defense counsel at trial. Appellant argues in his second and third claims that his trial counsel was ineffective for failing to raise appropriate objections to ostensibly inadmissible, legal-opinion testimony beyond the objections addressed in his fourth and fifth claims. Finally, in his first claim, Appellant asserts that the trial court erred by refusing to permit Appellant to raise these IAC claims for direct appellate review in accordance with **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013).

## Section 6106 and the Sportsman's Permit Exception

Initially, we begin our analysis by addressing the Sportsman's Permit Exception to Section 6106 violations, as it is undisputed that the applicability of that exception was effectively the sole issue for the jury to decide in this case in determining Appellant's guilt. Section 6106 is defined, in pertinent part, as follows:

**(a) Offense defined.--**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

**(b) Exceptions.--**The provisions of subsection (a) shall not apply to:

\*\*\*

(9) Persons licensed to hunt, take furbearers or fish in this Commonwealth, if such persons are actually hunting, taking furbearers or fishing as permitted by such license, or are going to the places where they desire to hunt, take furbearers or fish or returning from such places.

18 Pa.C.S. § 6106.

Thus, as is relevant in this case, Section 6106 generally prohibits, *inter alia*, the carrying of a firearm in a vehicle without a carry-concealed permit. 18 Pa.C.S. § 6106(a)(1). A violation of Section 6106 is graded as a third-degree felony, unless the defendant is "otherwise eligible to possess a valid" carry-concealed permit, in which case the offense is graded as a first-degree misdemeanor. 18 Pa.C.S. § 6106(a)(2).[6] Numerous exceptions to the prohibition defined in Section 6106(a) are set forth in Section (b) of the statute. ***See*** 18 Pa.C.S. § 6106(b). The Sportsman's Permit Exception provides that persons licensed to "hunt, take furbearers[,] or fish" in Pennsylvania are not subject to the prohibition set forth in Section 6106(a), provided that the licensed individuals are "actually" engaged in, or in transit to or from, the activities for which they are licensed. 18 Pa.C.S. § 6106(b)(9). Some of the exceptions set forth in Section 6106(b) apply only to unloaded

_____

[6] Appellant's sentencing order indicates that he was convicted of the misdemeanor grading of Section 6106. Sentencing Order, 8/20/21, at 1 (filed on 8/27/21).

firearms.[7]    The Sportsman's Permit Exception **is not one of those**

**exceptions**.    Nevertheless, an entirely separate statute, Section 6106.1,

prohibits carrying a loaded firearm in vehicle.    18 Pa.C.S. § 6106.1.[8]

## **Unitary Review under *Holmes***

In Appellant's first claim, he contends that the trial court erred in

denying his request to litigate his IAC claims on direct appeal.    Appellant's

Brief at 22-23.    Since our Supreme Court's decision in ***Commonwealth v.***

***Grant***, 813 A.2d 726 (Pa. 2002), *abrogated on other grounds*,

***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), it has been the

general rule that IAC claims may only be raised in PCRA proceedings, subject

to a few limited exceptions.    ***Holmes***, 79 A.3d at 563.    In ***Holmes***, our

Supreme Court limited these exceptions to two categories of cases

(hereinafter "***Holmes*** exceptions"): First, the ***Holmes*** Court recognized an

exception "where a discrete claim (or claims) of trial counsel ineffectiveness

---

[7] For example, Section 6106(b)(4) provides an exception for any "persons engaged in target shooting with a firearm, if such persons are at or are going to or from their places of assembly or target practice and if, while going to or from their places of assembly or target practice, **the firearm is not loaded**." 18 Pa.C.S. § 6106(b)(4) (emphasis added).  Likewise, the exception set forth in Section 6106(b)(8), pertaining to transportation of a firearm related to its purchase, sale, or repair, only applies if the firearm "**is not loaded**[.]"  18 Pa.C.S. § 6106(b)(8) (emphasis added).

[8] Section 6106.1 is also subject to several of the same exceptions that apply to Section 6106.  **See** 18 Pa.C.S. § 6106.1(a) ("The provisions of this section shall not apply to persons excepted from the requirement of a license to carry firearms under section 6106(b)(1), (2), (5) or (6)….").  However, there is no Sportsman's Permit Exception to Section 6106.1 offenses.  **Id.**

is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice[.]" *Id.*

> Second, with respect to other cases and claims, … where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown,[1] and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.
>
> > [1] … [I]n short sentence cases[,] the trial court's assessment of good cause should pay particular attention to the length of the sentence imposed and the effect the length of the sentence will have on the defendant's realistic prospect to be able to avail himself of collateral review under the PCRA.

*Id.* at 563–64.

Seeking relief under the second *Holmes* exception, Appellant argued in his timely-filed post-sentence motion that the short duration of his remaining sentence provided 'good cause' to litigate his IAC claims on direct appeal. Post-Sentence Motion, 8/27/21, at 2 ¶ 13 (unnumbered pages). Appellant also sought to expressly waive his future PCRA rights in accordance with the requirements outlined in *Holmes*. *Id.* at 2-3 ¶¶ 13-20. Appellant then provide a brief description of the IAC claims he intended to pursue if his request for unitary review was granted. *Id.* at 3 ¶¶ 21-23.

Notably, in order to be eligible for relief under the PCRA, a petitioner must plead and prove, *inter alia*, that he is "currently serving a sentence of imprisonment, probation or parole" for the conviction from which he seeks

relief. 42 Pa.C.S. § 9543(a)(1)(i). The "requirements set forth in [S]ection 9543 establish only a petitioner's eligibility for post-conviction relief, and do not implicate the PCRA court's jurisdiction to act on a petition." *Commonwealth v. Fields*, 197 A.3d 1217, 1223 (Pa. Super. 2018) (*en banc*). Nevertheless, "our Supreme Court has held that even if a petitioner is serving a sentence when a PCRA petition is filed, the petitioner cannot obtain relief under the PCRA once the sentence has expired." *Commonwealth v. Auchmuty*, 799 A.2d 823, 825 (Pa. Super. 2002) (citing *Commonwealth v. Ahlborn*, 699 A.2d 718 (Pa. 1997)).

In the order denying Appellant's post-sentence motion, the trial court denied Appellant's attempt to invoke the second *Holmes* exception under the rationale that the time for Appellant to file a direct appeal had already expired.[9] *See* Order, 11/19/21, at 3. In its Rule 1925(a) opinion, however, the trial court acknowledged its reasoning for denying Appellant's post-sentence motion was erroneous. *See* Trial Court Opinion ("TCO"), 2/17/22, at 4. Contrary to its analysis in the order denying Appellant's post-sentence motion, the period for Appellant to file a timely notice of appeal did not end until 30 days after the court issued its order denying Appellant's post-sentence motion. *See* Pa.R.Crim.P. 720(A)(2).

_____

[9] Thus, the court rejected Appellant's argument that his short sentence was an impediment to obtaining review of his IAC claims under the theory that, because Appellant ostensibly could no longer file a direct appeal, his only option at that point was to immediately proceed to collateral review by filing a PCRA petition, wherein he could raise his IAC claims.

Nevertheless, in its Rule 1925(a) opinion, the trial court offered alternative analyses in support of its decision to deny Appellant the opportunity to litigate his IAC claims on direct appeal. Initially, the court found that Appellant "executed a knowing and express waiver of entitlement to seek PCRA review," and, accordingly, that "the second prong of the second *Holmes* exception" is not at issue in this case. TCO at 10 n.20.

As to the first prong—whether there was good cause shown to conduct unitary review—the trial court conceded that "Appellant's appeal pertaining to issues four and five may not be decided until approximately December 2022." *Id.* at 10. The trial court nevertheless "believes there would still be sufficient time to review and dispose of Appellant's PCRA [petition], if any, but acknowledges that it would be a closer call than previously analyzed given proper consideration of the pending appeal." *Id.* The court made that determination under the understanding that Appellant's term of parole is set to expire "on January 26, 2023[.]" *Id.* at 10 n.21.

We are compelled to reject the trial court's ambitious yet ultimately unrealistic timeline because, as the *Holmes* Court advised, when a defendant seeks to show "good cause" for unitary review based on the short length of his sentence, the trial court is obligated to "pay particular attention to the length of the sentence imposed and the effect the length of the sentence will have on the defendant's *realistic* prospect to be able to avail himself of collateral review…." *Holmes*, 79 A.3d at 564 n.1 (emphasis added). The likelihood that Appellant's direct appeal would be fully resolved before

- 12 -

December of 2022 is by itself an ambitious guess. Given that date is less than four months away from the date of this decision, it is not a realistic timetable should this Court be required to reach a decision following a filing for reconsideration of our decision by a party, nor does it afford much time to review this matter should either party file a petition before the Pennsylvania Supreme Court.

In any event, even assuming Appellant's direct appeal were to conclude by December of 2022, and assuming he immediately filed a PCRA petition thereafter, it is even more unrealistic to believe that PCRA review could be meaningfully obtained before Appellant's parole expires on January 26, 2023. The lower court perhaps mistakes meaningful collateral review of Appellant's IAC claims with its willingness and ability to act swiftly in holding an IAC hearing and then reaching a fair conclusion in this case before January 26, 2023. Indeed, we do not doubt that the lower court could, in fact, move with the utmost haste. However, that belief neglects to consider Appellant's **realistic** ability to obtain relief following an adverse decision in the PCRA court. Even assuming the PCRA court could reach a decision before Appellant's term of parole expires, his eligibility for relief would expire soon thereafter, ultimately depriving Appellant of any opportunity to obtain review in the appellate courts should the PCRA court deny relief.

In **Commonwealth v. Delgros**, 183 A.3d 352 (Pa. 2018), our Supreme Court indicated that the **Holmes** decision "directed trial courts to 'err on the side of favoring the vindication of constitutional rights otherwise susceptible

- 13 -

to forfeiture,' and conveyed confidence that trial courts in short sentence cases will recognize these concerns and liberally permit unitary review." *Id.* at 361 (quoting **Holmes**, 79 A.3d at 578.) It is apparent from the record that, rather than erring on the side of the vindication of Appellant's constitutional right to receive meaningful review of claims regarding his Sixth Amendment rights, and his right to appellate review of such claims, the trial court did not liberally permit unitary review, and instead strained to find reasons not to permit it.

Consequently, we conclude that the trial court abused its discretion in denying unitary review in the circumstances of this case by erroneously concluding that Appellant failed to show good cause under the second **Holmes** exception. The trial court should have permitted Appellant to raise his IAC claims on direct appeal, where the record demonstrates that the remaining length of his sentence is too short to afford him a realistic ability to obtain meaningful consideration of his IAC claims during collateral review under the PCRA.

However, because the trial court also provides some alternative reasons for us to affirm its decision, despite its error in the application of **Holmes**, we feel compelled to briefly address those matters. In its Rule 1925(a) opinion, the trial court indicates that we should affirm based on several other theories that it never offered below in denying unitary review of Appellant's IAC claims. First, the trial court finds that,

> [a]s to those ineffective assistance of counsel claims, this [c]ourt would have denied relief had it reached the merits. First, Appellant neither pled that the allegations of ineffective assistance

- 14 -

of counsel were not previously litigated[, n]or waived pursuant to 42 Pa.C.S.[] § 9543(a)(3). More importantly, however, Appellant failed to plead any prong related to the ineffective assistance of counsel. **Commonwealth v. Keaton**, 45 A.3d 1050, 1060-61 (Pa. 2012). Furthermore, Appellant never discussed any prong at the hearing. As pled in paragraphs 21 and 22 of Appellant's Motion filed August 30, 2021, the claims are simply undeveloped.

TCO at 10-11.

However, Appellant argues that,

in its Rule 1925(a) [opinion], the trial court … conflat[es] the requirements of a PCRA petition and PCRA appellate brief with the requirements needed to waive PCRA review. **See** … [TCO] at 11. The trial court ignored that [Appellant]'s post-sentence motion was not a PCRA petition and was seeking to waive his PCRA rights — not present argument on the underlying issues in question at that time. **See** … **Delgros**, 183 A.3d [at] 362 … ("Appellant's challenges to trial counsel's stewardship set forth in post-sentence motions are not 'collateral claims' subject to the requirements of the PCRA."). Had the trial court granted the PCRA waiver, it could have scheduled an evidentiary hearing on the ineffectiveness issues and/or requested that [Appellant] submit a brief or memorandum of law.

Here, the court did not request, pursuant to Pa.R.Crim.P. 720(B)(2)(a), that [Appellant] present a brief arguing the underlying merits of his [IAC] issues before the scheduled argument on the PCRA waiver issue. Pointedly, because the trial court incorrectly denied [Appellant]'s PCRA[-]waiver request, he never was afforded the opportunity to develop arguments on those issues. Simply put, the trial court did not schedule a hearing on the ineffectiveness issues and the hearing that was scheduled was not for the purposes of developing and arguing the merits of the claims; rather, it was for the purpose of deciding if [Appellant] could validly waive PCRA review and to conduct a colloquy.

A trial court cannot erroneously deny PCRA waiver, as it did here, and then fault counsel for not arguing the merits of the underlying [IAC] claims where the [c]ourt said [Appellant] had to wait until PCRA review. The trial court's belated reasons for denying PCRA waiver are no more sound than its original ruling.

\*\*\*

- 15 -

> The trial court also erroneously insinuated in its Rule 1925(a) opinion that [Appellant] did not adequately plead his ineffectiveness claims. [TCO] at 11. But this ignores that [Appellant]'s post-sentence motion was asking for permission to litigate and develop those arguments by waiving PCRA review — and the [c]ourt erroneously denied that request.

Appellant's Brief at 33-36.

We agree with Appellant. His post-sentence motion seeking unitary review was not subject to the requirements of the PCRA and, unlike the first *Holmes* exception, the second *Holmes* exception does not require any inquiry into the underlying merit of the IAC claims sought to be raised. Under the second *Holmes* exception, a litigant need only establish good cause shown and expressly waive his PCRA rights to obtain unitary review. As discussed above, both those prongs were established in this case. Only after Appellant demonstrated those two prongs was he then entitled to raise his IAC claims on the merits and test those claims at an evidentiary hearing in order to resolve factual issues. Neither the trial court nor the Commonwealth cite to any case law suggesting that IAC claims must be fully developed for review in a post-sentence motion when initially seeking unitary review under the second *Holmes* exception, nor has this Court found any pertinent cases setting forth such a requirement. Because the trial court denied Appellant the opportunity to have unitary review of his IAC claim on direct appeal, we cannot accept the court's *post hoc* rationale that the claims were insufficiently developed for review when the court's actions themselves deprived Appellant of the opportunity to meaningfully develop those claims with further argument and/or a hearing.

Second, the trial court further found that, had it reached the merits of Appellant's IAC claims, it would have denied them for the same rationale it used to reject Appellant's non-IAC claim related to the testimony of Sergeant Wharton and Sheriff Levindoski.[10]  The court states:

> [N]either ineffectiveness allegation would have prejudiced Appellant.  But for counsel's error, the outcome of the proceeding would have been the same based upon … harmless error and the fact this [c]ourt properly instructed the jury on the law, and the jury is presumed to have followed this [c]ourt's instructions….  Thus, because the outcome would not have been different, Appellant would necessarily fail to meet the prejudice prong of the IAC [test].
>
> Accordingly, this [c]ourt respectfully requests the [Superior] Court deny relief regarding alleged errors two and three and sustain the verdict.  Even if the [c]ourt abused its discretion in denying to exercise its discretion to permit unitary review, it would have denied relief on the merits.

TCO at 11-12.

It is odd that the trial court first asserts that Appellant's IAC claims were insufficiently developed for its review, yet also finds the claims sufficiently developed to dismiss them on the merits.  Furthermore, the purpose of unitary review is to allow an Appellant to raise all his claims, including those typically reserved for collateral review, in a single direct appeal.  However, because Appellant's non-IAC claims are interrelated and ultimately would entitle him

---

[10] We note that, to prevail on an IAC claim, the defendant must plead and prove by a preponderance of the evidence that: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the [defendant] suffered resulting prejudice." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015).  A failure to prove any prong of the IAC test will defeat an IAC claim. *Id.*

- 17 -

to a new trial—the same relief that would be afforded to Appellant should he ultimately prevail on those claims on remand—we address those non-IAC claims now as a matter of judicial economy.

**Appellant's Non-IAC Claims**

In his fourth issue, Appellant claims that the trial court erred in failing to grant a new trial based on Sergeant Wharton's ostensibly inadmissible testimony regarding the applicability of the Sportsman's Permit Exception to Section 6106. In his fifth issue, Appellant asserts that the trial court erred in failing to grant a new trial based on Sheriff Levindoski's testimony regarding Section 6106.1. In both cases, Appellant maintains that the court erroneously permitted these two law enforcement officers to testify to their legal interpretations of Pennsylvania's firearm laws. According to the trial court, both claims were "properly before the [c]ourt for review[,]" indicating that Appellant's contemporaneous objections were timely and sufficiently raised the issues presented in Appellant's Rule 1925(b) statement. TCO at 5. The Commonwealth also takes no issue with Appellant's preservation of these claims.

Our standard of review regarding the admissibility of evidence is well settled:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result

- 18 -

of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (cleaned up). Even when evidence is wrongfully admitted, however, such error is subject to harmless error analysis. *See Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. 2007).

Furthermore, the Pennsylvania Rules of Evidence provide as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

With respect to his fourth issue, Appellant's trial counsel objected to the prosecutor's asking Sergeant Wharton what, "the Sportsman's Permit

entails?" N.T. Trial at 101. Defense counsel argued that it "was a matter of law for the [c]ourt to decide." *Id.* The prosecutor responded that he was merely attempting to elicit why Sergeant Wharton filed charges when "he knew there was a Sportsman's permit in play[.]" *Id.* The trial court appears to have denied the objection, stating: "Well, the [c]ourt is certainly[] going to instruct on it. However, I'll give the Commonwealth a little latitude here." *Id.*

Sergeant Wharton then testified: "[L]ooking at the definition of the crimes code … it meant [Appellant] had to be in the act of hunting, fishing, whatever, or coming there, back, or going to." *Id.* at 102. The prosecutor then asked Sergeant Wharton if he was "able to determine if [Appellant] was doing any of those activities," to which the officer responded that "[t]here was no indication by the incident we were called to, that [Appellant] was doing any of the activities [that] a Sportsman's Permit allows him to do." *Id.*

Appellant asserts this is "nothing short of testimony that [Appellant] was guilty of the offense charged." Appellant's Brief at 54. He argues that it constituted "improper legal opinion testimony … proving a legal conclusion as to the result that the prosecution wanted the jury to reach." *Id.* at 57. In its Rule 1925(a) opinion, the trial court did not address whether this testimony was admissible but, instead, determined that it was harmless error. TCO at 5. The Commonwealth argues, however, that Sergeant Wharton did not provide improper legal opinion testimony. Commonwealth's Brief at 11. The Commonwealth instead contends that:

> Sergeant Wharton was the arresting officer in this case. His testimony was an effort to explain what he charged and why. He explained that [A]ppellant would need to be actually hunting, fishing, trapping, etc.[,] to fall under the exception of carrying a loaded firearm in his vehicle. The testimony that there was no indication [A]ppellant was doing any of the things a Sportsman's Permit allows him to do was the officer's observation of the crime scene. This was not a legal opinion. This was the arresting officer's testimony based on his investigation.

*Id.* at 11-12.

We agree with the Commonwealth. Sergeant Wharton's testimony regarding the Sportsman's Permit Exception to Section 6106 contained no interpretive elements of the law at all. To the extent that he spoke to the legal elements of the exception, he merely stated what they are, and did so accurately. *See* 18 Pa.C.S. § 6106(b)(9) (stating that the exception applies only if those persons holding a Sportsman's Permit are "actually hunting, taking furbearers or fishing as permitted by such license, or are going to the places where they desire to hunt, take furbearers or fish or returning from such places"). Recitation of the pertinent text of the statute does not constitute "specialized knowledge" within the meaning of Rule 701(c), as nothing in that part of his statement could accurately be construed as an opinion, even though Sergeant Wharton did not quote the statute word-for-word. He then testified, ***based on his direct observations at the scene***, regarding the ***factual*** question of whether he had seen any evidence that corroborated Appellant's claim that he was going fishing when the vehicle stop occurred. That was factual testimony that was "rationally based on the witness's perception[,]" not legal opinion testimony and, therefore, it was

- 21 -

permissible under Rule 701(a). Thus, we conclude that Appellant's fourth claim is meritless.

In his fifth claim, Appellant contends that the trial court erred in permitting Sheriff Levindoski to "testify to his legal interpretation of [Section] 6106.1, which was not charged and not at issue." Appellant's Brief at 57. Again, the trial court failed to address the admissibility of Sheriff Levindoski's at-issue testimony, and instead concluded that any error was harmless. **See** TCO at 5-6. In its brief, the Commonwealth does not present any argument that the Sheriff's at-issue testimony was permissible under the rules of evidence, and instead argues in support of the trial court's harmless-error analysis. However, the Commonwealth also does not expressly concede that Sheriff Levindoski's testimony regarding Section 6106.1 was inadmissible. Despite an utter lack of justification by the trial court or the Commonwealth regarding the admission of the Sherriff's testimony regarding Section 6106.1 over Appellant's objection, we will first address its admissibility.

Sheriff Levindoski was Commonwealth's final witness at trial. **See** N.T. Trial, 6/2/21, at 107-29. He indicated that he was Sheriff of Tioga County, **id.** at 107, and in that capacity, he administered license-to-carry permits for that county, **id.** at 108. He also asserted that he had specialized training as a certified firearms instructor for handguns. **Id.** Without objection, he testified regarding the general rules governing carry-concealed permits in Pennsylvania. **Id.** at 108-12. At one point, he indicated that citizens are not allowed to carry a **loaded** firearm in a vehicle without a carry-concealed

permit.[11] *Id.* at 109-10. The prosecutor then asked Sheriff Levindoski to read Section 6106.1 into the record. *Id.* at 112-13. The prosecutor then asked the Sheriff: "I guess, in common terms[,] what is that statute telling us?" *Id.* at 113. Appellant's trial counsel objected to the testimony being elicited by the prosecutor. *Id.* The trial court then stated: "Well, this gentleman cannot instruct the jury on matters of law because that is the function of the [c]ourt. As a certified firearms instructor, I think he can indicate what his practice is." *Id.* The prosecutor then asked: "[T]hat statute is specifically saying that you can't have a loaded fire[]arm, and a gun unless. [*sic*] Okay, what are – as you understand as a firearms instructor, what are those exceptions?" *Id.* at 113-15. Sheriff Levindoski responded: "I'll be honest, that – that piece [doesn't] necessarily … have much to do with being a firearms instructor[,] it is completely separate just so we're clear … **but my interpretation is**, unless there's something different in the game law under Title 34 that would make you exempt …[,] this is basically saying, you cannot [carry a loaded firearm in a car,] unless you have a Concealed[-]Carry Permit[.]" *Id.* at 114 (emphasis added).[12]

---

[11] Sherriff Levindoski did not indicate *which* law rendered this conduct illegal. That is, he did not distinguish between Section 6106's prohibition against carrying *any* firearm in a vehicle without a carry-concealed permit—the sole criminal charge at-issue in this case—and Section 6106.1's more specific prohibition of carrying a *loaded* firearm in a vehicle, for which Appellant was not charged.

[12] After this exchange, Sheriff Levindoski also testified to his personal knowledge (as the administrator of carry-concealed permits in Tioga County) *(Footnote Continued Next Page)*

Appellant argues that Sheriff Levindoski "should not have been permitted to give his legal interpretation of the law. Pointedly, the testimony is even more prejudicial where the statute[] in question w[as] not relevant to the charge at issue." Appellant's Brief at 59. We agree with Appellant. There was no legitimate purpose for Sheriff Levindoski to testify to the contents, much less his interpretation, of the prohibition against carrying a loaded firearm in a vehicle set forth in Section 6106.1. Viewed as a lay witness, his opinion testimony regarding the statute was not relevant to his perception of events or any facts at issue in the prosecution of a Section 6106 violation (unlike Sergeant Wharton's testimony regarding the Sportsman's Permit Exception). *See* Pa.R.E. 701(a) and (b). Nor could Sheriff Levindoski be said to have been testifying as an expert with respect to the meaning or application of Section 6106.1. To the extent that the record might be read to show that Sheriff Levindoski was admitted as an expert, it was only due to his specialized training as a certified firearm instructor. However, in response to the Commonwealth's question about his interpretation of Section 6106.1, Sheriff Levindoski specifically disavowed that his expertise in that area was relevant to his answers regarding Section 6106.1. Thus, his opinion testimony was also inadmissible under Rule 702.

_____

that Appellant did not possess a carry-concealed permit at the time of the vehicle stop. *Id.* at 115. This appears to be the only testimony provided by Sheriff Levindoski that was based on his personal knowledge of factual matters that were relevant to Appellant's charge under Section 6106.

- 24 -

Nevertheless, the trial court maintains that the erroneous admission of this testimony constituted harmless error:

Here, any error in including the testimony of … Sheriff … Levindoski[ ]regarding his interpretation of [Section] 6106.1 and the prohibitions regarding the carrying of a loaded pistol … w[as] insignificant compared to the properly admitted evidence that established the inapplicability of the affirmative defense of the Sportsman's Permit Exception….

As articulated by Appellant's counsel in opening argument:

The question before you is going to be, is the exception applicable to [Appellant]?  The exception allowing him to have the pistol if he has the Sportsman's Firearm Permit, is that exception applicable in this case, and if you find that it is then you must find [Appellant] not guilty of the charge.

Specifically, the issue of … whether the affirmative defense of the Sportsman's Permit [Exception] was applicable in this case[,] the only exception relied upon by Appellant at trial[,] was a question of fact for the jury to decide.  Moreover, because the issue of whether the exception is applicable is an affirmative defense, it was Appellant[`]s burden to prove [it] by a fair preponderance of the evidence.

Therefore, because of the shifting burden and lower standard of proof, this [c]ourt does not believe that the properly admitted and uncontradicted evidence of guilt need be "so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict."  Instead, this [c]ourt's position is that a lower standard of harmless error for affirmative defenses should apply, such as: the uncontradicted evidence of guilt need only be overwhelming and the prejudicial effect of the error need only be insignificant.

Notwithstanding, this [c]ourt believes there is sufficient evidence that the higher standard of harmless error has been met, which is sufficient to prove that the error was harmless beyond a reasonable doubt.  Additionally, this [c]ourt believes that the alleged errors did not prejudice Appellant.

Specifically, … Caffo[] testified that prior to leaving Wellsboro to head to her home in Osceola, she and … Appellant were not in the

vehicle at any other point earlier that day. She also testified that [she] and … Appellant were not hunting, fishing, or trapping, nor was there any intent of going hunting or fishing when she left Wellsboro and got into the vehicle; rather, the intent was to go home and there was no mention of going hunting or fishing. [N.T. Trial at 5-16.]

Additionally, Sergeant Wharton testified, "There was no indication by the incident we were called to, that [Appellant] was doing any of the activities in which a Sportsman's Permit allows him to do." [*Id.* at 102.]

Lastly, Appellant himself testified that he arrived at [Caffo's] around 7:30 [or] 8:00 p.m. with the intent to drop her off and then go fishing, but the jury is permitted to reasonably infer otherwise given the time that evening and his bias.

Therefore, the inapplicability of [the Sportsman's Permit Exception] was never really in doubt. Frankly, it was not a close case.

Moreover, this [c]ourt properly instructed the jury regarding the law applicable to this case, and the jury is presumed to have followed the court's instructions. ***Commonwealth v. Williams***, 245 A.3d 710, 723 (Pa. Super. [] 2021).

Accordingly, this [c]ourt respectfully requests the [Superior] Court [d]eny relief … since any error was harmless.

TCO at 5-8 (some citations, footnotes, and quotation marks omitted).

Initially, we reject the trial court's notion that some alternative, harmless error standard applies to our review of its error in admitting Sheriff Levindoski's at-issue testimony. The trial court cites no authorities suggesting that alternative harmless error standards exist under Pennsylvania jurisprudence, much less that such a standard would apply in the circumstances of this case due to Appellant's burden to prove the applicability of the Sportsman's Permit Exception by a preponderance of the evidence below. Our Supreme Court

has held that an error may be considered harmless "**only if** the appellate court is convinced **beyond a reasonable doubt** that the error is harmless." **Commonwealth v. Story**, … 383 A.2d 155, 162 ([Pa.] 1978) [(emphasis added)]. "[A]n error cannot be held harmless unless the appellate court determined that the error **could not have contributed to the verdict**. Whenever there is a reasonable probability that an error might have contributed to the conviction, the error is not harmless." **Id.** at 164 [(emphasis added)]. In **Story**, th[e] Supreme Court outlined three scenarios under which an error may be deemed harmless, which have been summarized in subsequent cases as follows:

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Fulton**, … 179 A.3d 475, 493 ([Pa.] 2018) (additional citations omitted).

**Commonwealth v. Jones**, 240 A.3d 881, 891–92 (Pa. 2020).

With this well-established standard as our guide, we address the trial court's holding that its error was harmless because it was insignificant in comparison to the evidence of guilt, and because it properly instructed the jury as to the applicable law. For the following reasons, we disagree.

First, we repeat that there is no dispute that the essential issue at trial was the applicability of the Sportsman's Permit Exception. Absent Sheriff Levindoski's inadmissible testimony (and the Commonwealth's reliance thereon), that issue should have turned solely on the factual question of whether Appellant was going fishing at the time his vehicle was stopped by

police. The trial court construes this matter as "not a close case[,]" TCO at 8, but the record does not support a determination that the evidence was overwhelming. The issue was, fundamentally, a battle of credibility between Appellant and a few of the Commonwealth's witnesses. The jury, and not the trial court, had the sole province to resolve this credibility dispute.[13]

Appellant testified that he is an avid outdoorsman, that he intended on going fishing on the day of the stop, but that his "day didn't go as was planned." N.T. Trial at 131-32. He stated that although he was involved in a dispute with Caffo, he "was going fishing to unwind afterwards[,]" and that he was trying to "get her out of … [his] vehicle and leave … to do other things." *Id.* at 133. He said he intended to take her home before he went fishing. *Id.* at 134. He further testified that he had multiple fishing rods in the trunk of the vehicle, as well as a tackle box and other items that he would have used for that purpose. *Id.* He stated that the police did not search his trunk. *Id.* He indicated that the police only "checked the driver's area of the car." *Id.* Finally, he told the court that he believed he had a right to have the gun in the car because he possessed a Sportsman's Permit. *Id.*

On cross-examination, Appellant further explained that he intended to go fishing that day after dropping off Caffo, but after their dispute began,

_____

[13] The "fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." *Commonwealth v. Flor*, 998 A.2d 606, 626 (Pa. 2010). Here, the jury, and not the trial court, acted as the fact-finder. Thus, we need not afford any deference to the trial court's assessment of the witnesses' credibility.

Caffo refused to leave the vehicle. *Id.* at 136-37. When asked why he did not inform the police of his intent to go fishing at the time of his arrest, he stated that he was not "given an opportunity to explain" himself, and that "no questions were asked of [him] during the stop." *Id.* at 137.

Caffo testified that she and Appellant had not been fishing that day before the vehicle stop, that her intent in getting in the vehicle with Appellant was to go home, and that he had not mentioned going fishing. *Id.* at 71. Sergeant Andrew Adams of the Westfield Borough Police Department made the traffic stop of Appellant's vehicle. *Id.* at 76. He testified regarding his discovery of the firearm on the floor on the driver's side of the vehicle. *Id.* at 77. The firearm was in plain view from the outside of the vehicle. *Id.* at 80. He did not take possession of any evidence, but he did take photos of "a black handgun, a holster, a bullet, and a magazine." *Id.* at 78; *see also* Commonwealth's Exhibit 1. Sergeant Adams' testimony did not include any discussion of his interaction with Appellant beyond removing him from the vehicle, cuffing him, and placing Appellant in the rear of a police vehicle. *See id.* at 76. He did not indicate that he had spoken with Appellant or asked him any questions. He also did not indicate that he searched any other part of the vehicle beyond discovering the firearm on the floor in front of the driver's seat. The prosecutor did not ask Sergeant Adams if he saw any evidence consistent with Appellant's claim that he was going fishing.

Trooper Justin Millard of the Pennsylvania State Police also testified. *Id.* at 81-93. He arrived at the scene after Sergeant Adams had already placed

Appellant in custody. *Id.* at 82. He also observed the firearm, "a holster, a magazine with live rounds, and then one loose round in the foot area." *Id.* at 83. He took photos of these items as they were found in the vehicle. *Id.* at 84-86; Commonwealth's Exhibit 2. Trooper Millard did not testify as to any communications he had with Appellant. He specifically testified that he did not see anything else "of significance" in the vehicle, with the caveat that he did not "search the vehicle in any other way" beyond his involvement in photographing and then securing the firearm. *Id.* at 92. He was not asked any specific questions about whether he observed anything in the vehicle that was consistent or inconsistent with Appellant's claim that he had intended to go fishing that evening before he was stopped by police.

Finally, Officer Wharton testified.[14] He arrived at the scene with Trooper Millard. *Id.* at 96. He testified consistently with the other officers regarding the location and condition of the firearm found in Appellant's vehicle, and to the fact that Appellant did not possess a carry-concealed permit, because it had been previously revoked. *Id.* at 97-99. He further testified to the fact that Appellant possessed a Sportsman's Permit. *Id.* at 101. As discussed above, he also stated that "there was no indication by the incident" that Appellant "was doing any of the activities in which a Sportsman's Permit allows him to do." *Id.* at 102. He was not asked about the scope of his search of

_____

[14] As noted above, Sheriff Levindoski also testified for the Commonwealth, but he was not present for the vehicle stop and, therefore, could not speak to any facts in this case relevant to the credibility of Appellant's claim that he was going fishing.

the vehicle that led him to this conclusion. He also testified that Appellant was required to have a carry-concealed permit "to have [the firearm] loaded in the vehicle[.]" *Id.* at 103. He also stated that Appellant would not need a carry-concealed permit to transport the firearm in the vehicle "if [the firearm] wasn't loaded." *Id.* at 104.

Given this record, it is certainly the case that the jury was free to disbelieve Appellant's claim that, at the time of the stop, he intended to go fishing after dropping off Caffo. We also agree with the trial court and the Commonwealth that Caffo's testimony, coupled with Sergeant Wharton's testimony, if believed by the jury, tended to weigh against Appellant's credibility on that issue. However, the evidence contradicting Appellant's account was not overwhelming. First, Appellant did not testify that he intended to take Caffo fishing with him, nor could she fully speak to his intent in that regard. Second, none of the officers testified to having searched anywhere in the vehicle other than in the location where the firearm was found. Thus, Appellant's claims that he had a tackle box and fishing rods in his trunk, and that none of the officers had searched that location, were both left uncontradicted by the Commonwealth's evidence. Third, Appellant's testimony that none of the officers asked him questions about his intent to go fishing was also left uncontradicted. Such questions might have led the officers to conduct a more thorough search of the vehicle to confirm or refute Appellant's fishing claim. Thus, contrary to the trial court's characterization—that the factual question of whether Appellant was in transit to go fishing was

- 31 -

not a close case—the record indicates that it was merely a credibility issue for the jury to resolve, even if the greater weight of the established facts suggested that Appellant's story was not credible. It certainly was not impossible to believe that Appellant intended to go fishing until his plans were interrupted by his domestic dispute with Caffo, even if it appeared unlikely to the trial court.[15] If the jury believed Appellant's story, we see no reason why the Sportsman's Permit Exception would not apply. Moreover, the jury could have believed Appellant and concluded that the officers had simply failed to confirm or refute his claim because they had not thoroughly searched the vehicle or asked Appellant questions relevant to the applicability of the Sportsman's Permit Exception, rather than simply disbelieving their testimony. Simply put, the evidence against the applicability of the Sportsman's Permit Exception was not overwhelming in relation to the evidence for its applicability.

Most critically, however, the Commonwealth's explicit reliance on Sherriff Levindoski's inadmissible and irrelevant testimony regarding Section 6106.1 demonstrates that the error was not harmless. In its closing argument to the jury, the prosecutor invoked the Sheriff's testimony, stating: "[A]nd you heard Sheriff Levindoski testify that there is no way[,] unless you are a police office[r], have a badge of some sort, or have a [carry-concealed]

_____

[15] If the jury were to believe that Appellant's plan to go fishing was interrupted by that domestic dispute, that would also tend to undermine or deflate the strength of the inference that he was lying based on the time of the stop.

permit, that you can have a loaded gun in your car." ***Id.*** at 150-51. While that statement of the law is technically true (because such conduct is prohibited under Section 6106.1), Appellant was not on trial for a violation of Section 6106.1, and the Sportsman's Permit Exception to Section 6106 contains no caveat for loaded firearms.

The prosecutor next suggested that Appellant displayed consciousness of guilt when he told Caffo to tell the police that the gun was not loaded. ***Id.*** at 151. If the jury had believed Caffo's testimony that Appellant instructed her to lie, it was at least somewhat suggestive of Appellant's consciousness of guilt, which the jury was free to use in questioning Appellant's credibility.

However, the prosecutor then put the focus on the factual question of whether the firearm was loaded as being dispositive of whether Appellant was guilty of a violation Section 6106, regardless of whether the jury believed Appellant's fishing claim. ***See id.*** at 152 ("Again, we know now that [Appellant] was arguing that he was [going] fishing, ***but it – regardless[,] it doesn't matter because the gun is loaded, and even his Sportsman's Permit does not allow him to carry the gun loaded in the vehicle.***") (emphasis added). Indeed, even on appeal, the Commonwealth continues to conflate the prohibition against carrying a loaded firearm in a vehicle under Section 6106.1, a matter improperly introduced at trial through Sherriff Levindoski's testimony, with the applicability of the Sportsman's Permit Exception to Section 6106. ***See*** Commonwealth's Brief at 10 ("This case

rested on the fact of whether … the firearm was loaded in the vehicle.  The Commonwealth provided sufficient evidence to support that element.").

As noted above, whether the firearm was loaded or unloaded was not a relevant fact for purposes of whether Appellant could avail himself of the Sportsman's Permit Exception to Section 6106.  Although carrying a loaded firearm in a vehicle is prohibited by Section 6106.1, Appellant was never charged and was not on trial for that wholly-distinct offense.  We acknowledge that the trial court's instructions to the jury did not misstate the law with regard to Section 6106 or the Sportsman's Permit Exception, but nor did those instructions correct the conflation of Section 6106 and Section 6106.1 that pervaded Appellant's trial.  **See** N.T. Trial at 159-60.  Under these circumstances, we cannot conclude that the admission of Sherriff Levindoski's inadmissible and irrelevant legal opinion testimony regarding Section 6106.1 "could not have contributed to the verdict."  **Story**, **supra**.  The prosecutor invited the jury to decide this case based on that testimony, irrespective of Appellant's claim that he was going fishing.  Thus, we are not convinced beyond a reasonable doubt that the admission of that testimony was harmless error.  Appellant is entitled to a new trial.[16]

Judgment of sentence **vacated**.  Case **remanded** for a new trial. Jurisdiction **relinquished**.

---

[16] Consequently, it is unnecessary to remand for further IAC proceedings for purposes of unitary review under **Holmes**, as Appellant cannot obtain greater relief in such proceedings beyond a new trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/22/2022