J. S76021/16

2017 PA Super 197

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
EDWIN DOLORES QUILES, :
:
Appellant :
: No. 2274 EDA 2015

Appeal from the Judgment of Sentence March 12, 2015
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000531-2013

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY DUBOW, J.:                                    **FILED JUNE 23, 2017**

Appellant, Edwin Dolores Quiles, appeals from the Judgment of

Sentence entered in the Pike County Court of Common Pleas following his

conviction of two counts of Delivery of a Controlled Substance, and one

count of Criminal Conspiracy to Deliver a Controlled Substance.[1]  After

careful review, we affirm Appellant's convictions, but vacate his Judgment of

Sentence because the trial court erroneously considered Appellant's

Connecticut conviction for simple assault when determining Appellant's

Recidivism Risk Reduction Incentive ("RRRI") eligibility.

We summarize the relevant factual and procedural history as follows.

On October 24, 2013, Appellant and his co-defendant pulled into a gas

station in Pike County, Pennsylvania.  Appellant went into the gas station,

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 903(a)(1), respectively.

while his co-defendant made a pre-arranged sale of heroin to an undercover member of the Pike County Detective's Office. Following the controlled buy, Police Officer Joseph Ostrom entered the gas station and placed Appellant under arrest, while other officers took his co-defendant into custody.

Officers transported Appellant to the Pike County Detective Bureau Office, where Chief Detective Michael Jones and Officer Ostrom interviewed Appellant. At the beginning of the interview, which was conducted in English, Chief Detective Jones advised Appellant of his rights pursuant to **Miranda**.[2] Appellant acknowledged his rights, signed a written waiver of those rights, and spoke with Chief Detective Jones and Officer Ostrom. Appellant also signed written consent forms for the search of his automobile and his cellular phone.

Appellant was arrested and charged with two counts of Delivery of a Controlled Substance, one count of Criminal Conspiracy to Deliver a Controlled Substance, and related possession charges. Appellant filed a Motion to Suppress, seeking to suppress statements he gave to investigators and the evidence the investigators recovered in his phone and car on the grounds that he did not sufficiently understand English and was under the influence of heroin at the time he waived his rights and consented to the search.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

The trial court held a hearing on the Motion, at which Chief Detective Jones, Officer Ostrom, and Appellant testified. The trial court denied the Motion.

Appellant proceeded to a jury trial, and the jury convicted him of two counts of Delivery of a Controlled Substance, and one count of Criminal Conspiracy to Deliver a Controlled Substance.

On March 12, 2015, the trial court sentenced Appellant to an aggregate term of nine to thirty years of imprisonment. The court found that Appellant was precluded from RRRI eligibility "due to [Appellant's] previous conviction for Assault in the State of Connecticut." Sentencing Order, filed 3/12/15, at 2.

Appellant filed Post-Sentence Motions, which the trial court denied. Appellant timely appealed, raising the following issues:

> 1. Did the [t]rial [c]ourt commit error by denying [Appellant's] motions to suppress the contents of his cell phone and his statements to the police by a finding that he knowingly, intelligently, and voluntarily consented to both the search of the phone and to speak with the police?
>
> 2. Did the [t]rial [c]ourt commit error in its Sentencing Order by finding [that Appellant] was ineligible for RRRI?

Appellant's Brief at 8.

While the instant appeal was pending, our review of the record revealed that the Pre-Sentence Investigation ("PSI") report was missing from the certified record. We issued an Order directing the trial court to

supplement the record, and the trial court complied. With all necessary documents now before us, we turn to Appellant's arguments on appeal.

## Motion to Suppress

Our well-settled standard of review in an appeal from an order denying a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

In Pennsylvania, "the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted). If an individual gives valid consent, then the ensuing search is not unreasonable and the individual's constitutional rights are not violated by the police's conduct. *See Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991). To be considered valid, the consent must be "the product of an essentially free and unconstrained choice—not the result of

duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." ***Commonwealth v. Caban***, 60 A.3d 120, 130 (Pa. Super. 2012), overruled on other grounds as recognized in ***Commonwealth v. Coleman***, 130 A.3d 38, 42 n.1 (Pa. Super. 2015).

Similarly, "the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself." ***Commonwealth v. Fischere***, 70 A.3d 1270, 1275-76 (Pa. Super. 2013). This right may also be waived, if, under the totality of the circumstances, the waiver is "the product of an essentially free and unconstrained choice." ***Commonwealth v. Cruz***, 71 A.3d 998, 1005 (Pa. Super. 2013).

Appellant argues that neither his consent to search his property nor his waiver of his ***Miranda*** rights were freely and voluntarily given. Specifically, Appellant avers that he was under the influence of heroin during his interview and does not sufficiently understand the English language.

The trial court disagreed with both of these factual averments. Regarding Appellant's grasp of the English language, the trial court found that:

> [T]he evidence presented at the Suppression Hearing clearly indicated that [Appellant] understood English sufficiently to know what he was consenting to. Specifically, a tape of [Appellant's] interview with the arresting officer was introduced at the Hearing which clearly demonstrated that [Appellant] understood English, could comprehend questions posed to him by police, and could fully answer those questions in English without confusion, uncertainty, or any indication of lack of fully understanding the

questions posed . . . . Finally, at the Hearing itself, it was clear that even though an interpreter was provided to [Appellant], [Appellant] understood what was said in English, and was responding to his Counsel before the interpreter completed the translation of the question or other information into Spanish.

In addition, [Appellant] has resided in the United States most of his life. He obtained most of his education through 7th grade in the United States.

* * *

Officer Ostrom also testified that he was present at the time of the arrest of [Appellant], that [Appellant] acted normal, spoke English well and could understand what was being said to him and could both understand questions asked in English and could answer those questions in English.

Also introduced into evidence was the Consent to Search filled out and signed by [Appellant] on October 24, 2013 as well as the completed Miranda Warnings signed by [Appellant] on that same day. Those documents are signed by [Appellant] and the Consent to Search has [handwritten] additions to the Consent added by [Appellant] in English.

* * *

In addition, despite [Appellant's] claim that he requested an interpreter several times during his interrogation, the officer involved indicated that no such requests were made by [Appellant]. Further, a review of the recorded conversation indicates that no such requests were made during the recorded portion of the interrogation.

Order, filed 6/25/14, at 1-3.

Regarding Appellant's claim that he was under the influence of heroin at the time of his interrogation, the trial court found that:

[E]ven though [Appellant] claims he was under the influence of heroin at the time, [Chief Detective] Jones testified that he did not appear to be under the influence; that he acted normally; [and that] he was aware of what was going on and understood what was said to him.

* * *

It is clear from listening to the taped conversation that [Appellant] sounded alert and aware of everything being asked of him. His answers were direct, complete[,] and fully in response to the questions posed.

*Id.* at 1-2.

In short, the trial court found that the factual predicates to Appellant's suppression claim were simply not true; *i.e.*, that Appellant was not so intoxicated or deficient in English that his waiver and consent were not freely given. Our independent review of the record supports these findings, and we are, therefore, bound by them. *Jones, supra* at 654. Moreover, we can find no error in the trial court's legal conclusions. We, therefore, affirm Appellant's convictions.

## RRRI Eligibility

Appellant also avers that he is RRRI eligible, and the trial court did not have sufficient information at the sentencing hearing with which to determine that his criminal record for assault in Connecticut rendered him RRRI ineligible. Specifically, Appellant argues that "[a]s the record stands, it is impossible to deduce whether the Connecticut arrest[:] a) resulted in a conviction; b) if convicted, under which Connecticut statute; and c) whether that Connecticut statute has a Pennsylvania equivalent which disqualifies [Appellant] from RRRI consideration." Appellant's Brief at 19.

The question of whether a defendant is RRRI eligible "presents a question of statutory construction and implicates the legality of the sentence

imposed." ***Commonwealth v. Barbaro***, 94 A.3d 389, 391 (Pa. Super. 2014). "Therefore, our standard of review is *de novo* and the scope of our review is plenary. ***Id.*** (citation omitted).

RRRI eligibility "permits offenders who exhibit good behavior and who complete rehabilitative programs in prison to be eligible for reduced sentences." ***Commonwealth v. Hansley***, 47 A.3d 1180, 1186 (Pa. 2012). Not all defendants qualify for RRRI eligibility, and, therefore, "[w]hen a court imposes a sentence of imprisonment in a state correctional facility, the court must also determine if the defendant is eligible for an RRRI Act minimum sentence[.]" ***Id.*** at 1187.

For the reasons discussed in the next section, we find that there is sufficient evidence in the record to show that Appellant was, in fact, convicted of Assault in the Third Degree in Connecticut. However, we also find that Connecticut's Assault in the Third Degree is not an "equivalent offense" to Simple Assault and the trial court erred in considering it when determining the Appellant's eligibility for RRRI.

Sufficiency of Evidence of Connecticut Conviction

We begin by addressing Appellant's contention that the record does not contain sufficient evidence to support the conclusion that he had a conviction in Connecticut. Our review of the record and relevant Connecticut laws readily demonstrates that Appellant has a conviction in Connecticut for an assault and that Connecticut grades the assault as a M-A.

First, the PSI report notes that on January 8, 2001, the Hartford, Connecticut Police Department arrested Appellant and charged him with "Assault (M-A)" and "Breach of Peace (M-B)[.]" PSI report, dated 3/6/15, at 3. The PSI report further notes that Appellant received an "Unconditional Discharge" of the charges. *Id.* Under Connecticut law, an "Unconditional Discharge" releases a defendant "without imprisonment, probation supervision or conditions" but "**is for all purposes a final judgment of conviction**." C.G.S. § 53a-34(b) (emphasis added). Therefore, there is sufficient evidence to establish that the Appellant has a conviction for Assault.

Appellant further argues that the evidence is insufficient to establish under which Connecticut statute he was convicted. We can, however, determine the offense Appellant was convicted of by reviewing relevant Connecticut law. The PSI report establishes that Appellant was convicted of Assault graded as a Class A Misdemeanor and given an Unconditional Discharge.[3] In Connecticut, the only assault offense graded as a Class A Misdemeanor for which a defendant is eligible for an Unconditional Discharge

---

[3] In addition to distinguishing between felonies and misdemeanors, Connecticut "classifies" offenses using letter designations, similar to the way in which Pennsylvania "grades" offenses using a numeric system. *See* C.G.S. § 53a-26 (classifying misdemeanor offenses).

is Assault in the Third Degree,[4] codified under Connecticut law in C.G.S. §
53a-61. Thus, Appellant has a conviction for Assault in the Third Degree and
we find no merit to Appellant's first two arguments that the record does not
sufficiently establish whether Appellant was convicted of an offense in
Connecticut, and, if so, under which statute.

Appellant's Third Degree Assault Charge from Connecticut and RRRI
Eligibility

Having determined that Appellant has a prior conviction for Assault in
the Third Degree in Connecticut, as defined in C.G.S. § 53a-61, we turn to
the question of whether this prior conviction makes Appellant RRRI
ineligible.

The trial court, when evaluating a conviction from another state,
should compare the statute from the other state that defines the offense
with the Pennsylvania statute defining the same offense to determine
whether the two statutes are "substantially equivalent." **Barbaro**, 94 A.3d
at 393. If the two statutes are not "substantially equivalent," then the
foreign conviction should not be used in determining a defendant's RRRI
eligibility. **Id.**

In making the comparison between statutes, "the court must consider
the elements of the foreign offense in terms of classification of the conduct

---

[4] Assault in the Third Degree of an Elderly, Blind, Disabled, or Pregnant
Person is the only other Class A Misdemeanor Assault in Connecticut. C.G.S.
§ 53a-61a. However it carries a mandatory minimum sentence of one year
of imprisonment "which shall not be suspended or reduced." **Id.**

proscribed, its definition of the offense, and the requirements for culpability." *Barbaro*, 94 A.3d at 394 (emphasis omitted). "[T]he offenses do not identically have to mirror each other but must be substantially equivalent." *Id.* at 395 (citation omitted). Two statutes will be "substantially equivalent" where "the differences between the two statutes are insignificant when compared to the similarities." *Id.*

Importantly, our Supreme Court has held that even where two laws "appear to have similar elements[,]" they should not be considered "substantially equivalent" if they grade the offenses with different severity and reflect different policy considerations. *See Commonwealth v. Northrip*, 985 A.2d 734, 741-42 (Pa. 2009) (finding Pennsylvania's crime of Arson Endangering Persons is not "substantially equivalent" to New York's Arson in the Third Degree where (i) New York's arson offense was graded as a third-degree felony while the Pennsylvania offense is a first-degree felony; and (ii) the Pennsylvania statute reflected a choice by the legislature to punish those who endanger individuals, while the New York statute was intended to protect property).

Finally, trial courts should not focus on the particular facts underlying the conviction at issue, "but rather on the statute that triggered the conviction." *Id.* at 741; *see also Barbaro*, 94 A.3d at 394 ("We conclude that the test set forth in *Northrip* for determining the equivalence of crimes

under the Three Strikes Law is the appropriate test to use for purposes of the RRRI Act.").

With these precepts in mind, we turn to the question of whether Appellant's conviction for Assault in the Third Degree in Connecticut is analogous to the Pennsylvania offense of Simple Assault. Connecticut defines Assault in the Third Degree as follows:

> A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument[,] or an electronic defense weapon.

C.G.S. § 53a-61(a).

In contrast, Pennsylvania defines Simple Assault as follows:

> **(a) Offense defined.--** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> > (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
> >
> > (2) negligently causes bodily injury to another with a deadly weapon;
> >
> > (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
> >
> > (4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

> **(b) Grading.--**Simple assault is a misdemeanor of the second degree unless committed:
>
>> (1) **in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree**; or
>>
>> (2) against a child under 12 years of age by a person 18 years of age or older, in which case it is a misdemeanor of the first degree.

18 Pa.C.S. § 2701 (emphasis added).

Relevant to the instant appeal, the RRRI Act provides, *inter alia*, that a defendant is not eligible for RRRI if he has a conviction for a personal injury crime, such as an assault, or an equivalent offense under the laws of another state. 61 Pa.C.S. § 4503.

This statute, however, has an exception and permits a defendant with a conviction for a simple assault to remain RRRI eligible if the defendant was convicted of a simple assault graded as a misdemeanor of the third degree. *Id.* A Simple Assault is a misdemeanor of the third degree if the defendant committed the assault "in a fight or scuffle entered into by mutual consent." 18 Pa.C.S. § 2701. In contrast, a Simple Assault that was not the result of mutual consent is graded as a misdemeanor of the second degree. Thus, if a defendant commits a simple assault that was initiated by "mutual consent," the defendant is still eligible for RRRI.

The Connecticut statute, however, does not differentiate between a simple assault that a defendant initiates and one that the defendant and

victim initiate by mutual consent. Rather, the Connecticut statute treats all simple assaults the same.

Although this difference might not be significant for determining whether the assault statutes are similar generally, it is significant in light of the fact that the legislature specifically chose to permit defendants to remain RRRI eligible if they commit a simple assault that is initiated by "mutual consent."

Since the Connecticut statute does not provide for such a distinction and treats all simple assaults the same, regardless of whether they began by mutual consent, and our legislature provided for such an exception, we are constrained to find that in this situation, the simple assault statutes are not "substantially equivalent" and the trial court should not consider the Connecticut conviction when determining whether the Appellant is eligible for RRRI. For although the elements of the offenses may appear similar at first glance, much like the statutes in **Northrip**, there are meaningful differences in the way in which the two offenses are graded, and in the policy considerations reflected in the language of the statutes. Namely, Pennsylvania has made a policy determination that defendants who engage in fights by "mutual consent" are less culpable, and should have their Simple Assault convictions graded at a lesser degree, and should remain eligible for RRRI.

The trial court attempts to circumvent the problem posed by the mutual consent provision by noting that "[t]here is no evidence in the hearing record to establish that the prior Connecticut conviction involved mutual consent which would warrant it being treated as a misdemeanor of the third degree." Trial Court Opinion, filed 12/2/15, at 3. As discussed *supra*, however, the facts underlying Appellant's conviction are irrelevant to our analysis. *Northrip*, 985 A.2d at 741.

Accordingly, we affirm Appellant's convictions, but vacate Appellant's Judgment of Sentence and remand for resentencing and consideration of Appellant's eligibility for RRRI in light of the holding of this Opinion.

Convictions affirmed. Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2017

- 15 -