J-S34035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DAVIS WADE HALL :
:
Appellant : No. 469 WDA 2023

Appeal from the Judgment of Sentence Entered March 23, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001959-2021

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED: October 10, 2023**

Davis Wade Hall (Appellant) appeals from the judgment of sentence imposed following his jury convictions of two counts of possession of a controlled substance and one count each of possession with intent to deliver a controlled substance (PWID), possession of drug paraphernalia, and possession of a small amount of marijuana for personal use.[1] We affirm.

The trial court detailed the evidence presented at trial:

On October 29, 2020, Officer Kyle Richter [(Officer Richter)] went to 10 West Berkeley Street [(the property or the home)] in Uniontown, Pennsylvania to serve an arrest warrant on the Appellant. N.T. Criminal Jury Trial Proceedings, 3/8/23 at 47. The resident of the home, Kimberly Brown [(Brown)], consented to a search of the residence. *Id.* at 51. During the search, a locked safe was located in the master bedroom next to the bed. *Id.* at 51-52. Officers asked [] Brown for the combination, which she

_____

[1] 35 P.S. §§ 780-113(a)(16), 780-113(a)(30), 780-113(a)(32), and 780-113(a)(31).

did not provide. *Id.* at 55. Officers then asked Appellant for the combination, which he did provide. *Id.* Officers then opened the safe and found three knotted baggies, two containing suspected marijuana and the other containing an unknown white powder. *Id.* at 56. The baggies were later confirmed by laboratory results to contain 6.7 grams of marijuana, 0.4 grams of MDMB/synthetic cannabinoid, and 4.28 grams of fentanyl. *Id.* at 25-30. Officers also recovered a box of glassine baggies and a digital scale. *Id.* at 63-69.

Appellant testified at trial that he and [] Brown were in a relationship, and he spent the night [at the property] a few times a month, sleeping in the master bedroom with [Brown]. *Id.* at 77-78, 81. [Appellant] denied any knowledge of the safe or its contents. *Id.* at 79, 81. He denied knowing the combination to the safe or providing it to the police and stated that [] Brown gave [police] the combination. *Id.* at 81. Appellant stipulated to his prior conviction for receiving stolen property in 2012, and [the trial] court permitted its introduction at trial. *Id.* at 11, 79-80, 84.

Trial Court Opinion, 5/25/23, at 2 (some capitalization modified).

In October 2021, the Commonwealth charged Appellant with various drug crimes. Appellant timely filed an omnibus pre-trial motion to suppress evidence on September 8, 2022. Appellant claimed, "Officer Richter had no probable cause for the search, therefore any evidence obtained pursuant to said search should be suppressed." Motion to Suppress, 9/8/22, ¶ 7. The trial court held a hearing on Appellant's motion on October 25, 2022; Officer Richter was the only witness. The trial court denied the suppression motion and stated in its order:

Due to the fact that [] Brown, a resident of the [property], gave permission to search the house and that [Appellant] gave the [police o]fficers the code for the safe which is deemed [*sic*] by the [trial c]ourt to be implied consent to open the safe.

Order, 10/25/22.

At the jury trial on March 8, 2023, Officer Richter and Uniontown Police Detective Jamie Holland (Detective Holland) testified for the Commonwealth. The prosecution asked the trial court to qualify Detective Holland as an expert in the field of drug investigation on direct examination. N.T., 3/8/23, at 23. Appellant did not object. The trial court granted the Commonwealth's request. *Id.*

The prosecution also sought to qualify Officer Richter as an expert in the field of drug investigation. *Id.* at 43. Appellant objected, arguing Officer Richter was at the property "to execute a search warrant, not pursuing any kind of drug investigation."[2] *Id.* at 44. Officer Richter confirmed on cross-examination that he had never before "testified as an expert in regard to drug investigations[.]" *Id.* The defense complained to the trial court the prosecution

> already had one expert … testify who had been qualified multiple amount of times[, *i.e.*, Detective Holland. W]hy would the[] [prosecution] need this [additional expert] when [the prosecution] already had [an expert] qualified[?]

*Id.* at 46-47. The trial court denied Appellant's objection. The court reasoned:

> The issue of whether or not the Commonwealth needs another expert is of no relevance whatsoever and in the court's view[,] every expert in every field is going to have a first time at

---

[2] In actuality, police went to the property to serve Appellant with an arrest warrant. *Id.* at 47.

testifying. The court finds based on Officer Richter's hundreds of investigations of possession of controlled substances, [and] based on his experience as a police officer for five years and a member of the drug task force …[,] based on his training and experience the court will declare him an expert in the field of drug investigation.

*Id.* at 47 (some capitalization modified).

Appellant was the only witness for the defense. Consistent with his testimony at the suppression hearing, Appellant denied having any knowledge of the contraband in the safe and further denied giving police the combination or consent to search it. *Id.* at 78-80, 81-82.

The jury found Appellant guilty of the above offenses. On March 23, 2023, the trial court sentenced Appellant to an aggregate 6 – 12 years in prison. Appellant timely filed a motion for a new trial, claiming the jury's verdict was against the weight of the evidence. The trial court denied Appellant's motion on April 10, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.[3]

Appellant presents five issues for review:

1. Whether the trial court erred in failing to suppress the warrantless search of the home when the Appellant surrendered to the police without incident, which accomplished the purpose the police had for being at the home, before the police initiated the search, and when home[]owner, [] Brown, was in police custody prior to giving any consent to search the home?

2. Whether the trial court erred in failing to suppress the warrantless search of the safe where the drugs were found,

_____

[3] The Commonwealth did not file a brief on appeal.

- 4 -

when the police never received express consent to search the safe and the police received the combination to the safe after the Appellant and [] Brown were in police custody?

3. Whether the jury's guilty verdict is against the weight of the evidence, when the Commonwealth failed to exclude the possibility beyond a reasonable doubt that the drugs in question belonged to [] Brown?

4. Whether the trial court erred in allowing Officer [] Richter to testify as an expert in regard to drug investigations, when he had never before testified as an expert and when the Commonwealth had just called as an expert witness a much more experienced police officer, Detective [] Holland, as an expert in regard to drug investigations?

5. Whether the [trial] court erred in failing to sustain the objection to Officer [] Richter's attempt to explain during his testimony to the jury the legal definitions of possession with intent to distribute and constructive possession?

Appellant's Brief at 3 (capitalization modified).

We address Appellant's related first and second issues together. Appellant claims the trial court erred in denying his pre-trial motion to suppress, where the police unlawfully seized contraband from the safe. *See id.* at 13-18. According to Appellant, the trial court

erred in failing to suppress the warrantless search of the home[,] when the Appellant surrendered to police without incident, which accomplished the purpose the police had for being at the home, before the police initiated the search, and when home[]owner … Brown[] was in police custody prior to giving any consent to search the home.

*Id.* at 12. Appellant contends the "totality of the circumstances show that []

Brown was not aware that she had the right to refuse the request of the police

- 5 -

to search her home, and [her consent] therefore was not voluntary." *Id.* at

15.

In his second issue, Appellant complains police questioned him about

the combination to the safe without first advising him of his *Miranda*[4] rights.

*Id.* at 16-18. According to Appellant, he

> was clearly in police custody at the time when the police
> questioned him about the combination to the safe. In addition,
> the police should have known that questioning the Appellant about
> the combination to the safe was reasonably likely to elicit an
> incriminating response….

*Id.* at 18.

> Our standard of review is well-settled:
>
> When we review the ruling of a suppression court, we must
> determine whether the factual findings are supported by the
> record. When it is a defendant who appealed, we must consider
> only the evidence of the prosecution and so much of the evidence
> for the defense as, fairly read in the context of the record as a
> whole, remains uncontradicted. Assuming that there is support in
> the record, we are bound by the facts as are found and we may
> reverse the suppression court only if the legal conclusions drawn
> from those facts are in error.

*Commonwealth v. Brame*, 239 A.3d 1119, 1126 (Pa. Super. 2020) (citation

and brackets omitted). Our scope of review is limited to the record developed

at the suppression hearing, considering the evidence presented by the

Commonwealth as the prevailing party and any uncontradicted evidence

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

presented by Appellant. ***Commonwealth v. Fulton***, 179 A.3d 475, 487 (Pa. 2018).

> [I]t is hornbook law that the Fourth Amendment to the United States Constitution[,] as well as Article I, § 8 of the Pennsylvania Constitution[,] protect citizens from unreasonable searches and seizures. Warrantless searches and seizures (such as occurred in this case) are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement.

***Commonwealth v. Simmons***, 17 A.3d 399, 402-03 (Pa. Super. 2011) (citations, brackets and quotation marks omitted).

One exception to the warrant requirement is consent, either actual or implied. ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1124 (Pa. Super. 2021) (*en banc*). This Court has instructed:

> "To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction." ***Commonwealth v. Bell***, 871 A.2d 267, 273 (Pa. Super. 2005). Next, the Commonwealth must prove the consent was given voluntarily. ***Id.*** "To be considered valid, the consent must be the product of an essentially free and unrestrained choice — not the result of duress or coercion, express or implied, or a will overbo[]rne — under the totality of the circumstances. ***Commonwealth v. Quiles***, 166 A.3d 387, 391 (Pa. Super. 2017) (citations and internal quotation marks omitted).
>
> The Pennsylvania Supreme Court has also noted that because "both the tests for voluntariness [of consent] and for seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses." [***Commonwealth v.***] ***Strickler***, 757 A.2d [884,] 901-02 [(Pa. 2000)].

***Carmenates***, 266 A.3d at 1124 (some citations modified).

- 7 -

Our Supreme Court has explained that the standard for measuring the scope of a person's consent is

> based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (citations, ellipses and quotation marks omitted).

Instantly, the evidence presented at the hearing on Appellant's suppression motion consisted entirely of testimony from Officer Richter. Officer Richter testified he was dispatched to the property on October 29, 2020, to serve Appellant with an arrest warrant. N.T., 10/25/22, at 6, 8. Officer Richter was accompanied by two other law enforcement officers when he knocked on the front door. *Id.* at 8. Brown answered and informed police Appellant was inside the property. *Id.* at 9. Police entered the property and placed Appellant in handcuffs, pursuant to the arrest warrant. *Id.* Police escorted Appellant and Brown out of the property and asked Brown if she consented to a search of the property. *Id.* at 10. Brown consented to the search. *Id.*; *see also id.* at 15 (Officer Richter testifying Appellant "was present whenever [police] asked for the consent to search the [property]. He

never offered any, yes, no, anything like that, while Ms. Brown stated yes."). The search revealed a locked safe in a second-floor bedroom. *Id.* at 11.

Officer Richter offered the following testimony with respect to the safe:

[A law enforcement officer accompanying Officer Richter] asked Ms. Brown who the safe belonged to, if it was hers. [Brown] stated, no, it's not mine. At that point, [police] asked [Appellant about the safe]. [**Appellant**] **said it was his** and [police] asked for the code [to the safe,] to which [**Appellant**] **did give us the code** for the safe.

*Id.* at 12 (emphasis added). Officer Richter elaborated, when police "asked [Appellant] for the code to the safe[, Appellant] didn't ask why, **he didn't give any resistance**. He gave us the code." *Id.* (emphasis added). Officer Richter testified Appellant did not appear intoxicated. *Id.* Officer Richter confirmed no threats or promises were made to Appellant, *id.* at 13, and at no point did Appellant revoke his consent to the search of the safe. *Id.* at 15.

On cross-examination, Officer Richter confirmed Appellant was in handcuffs and seated on the porch to the property when he gave police the code, and that he was not free to leave at that point. *Id.* at 16. Officer Richter also stated police had not read Appellant his *Miranda* warnings at that time. *Id.* The trial court excused Officer Richter and considered argument on Appellant's suppression motion:

[Appellant's counsel]: Once [police] found the safe, then they came down and ask the guy that's [*sic*] in custody, that's not free to leave, that has not been *Mirandized*, the combination [to] the safe. I think that's the biggest problem. [Police] could have gotten a warrant for that safe but they didn't.

> THE COURT: Well, [Appellant] clearly didn't have to be **Mirandized**. [Appellant] was just asked a question for the password to the safe and the [c]ourt deems that giving the password to the [p]olice … is implied consent for them to open the safe.

*Id.* at 19. The trial court denied Appellant's suppression motion, noting that "Brown, a resident of the [property], gave permission to search the house and … [Appellant] gave the [o]fficers the code for the safe which is deemed by the [trial c]ourt to be implied consent to open the safe." *Id.* at 20; *see also* Order, 10/25/22 (stating same).

Initially, we conclude the Commonwealth proved Appellant consented to the search of the safe during a lawful police interaction, where police were at the property to place Appellant in custody pursuant to a lawful arrest warrant. *See Bell*, *supra* ("To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction."); *see also* N.T., 10/25/22, at 6, 8. Police discovered the safe upon receiving consent from Brown to search the property; Appellant did not object. N.T., 10/25/22, at 10, 15. Under the totality of the circumstances, Appellant voluntarily gave police implied consent to search the safe when he gave them the combination. *See Quiles*, *supra*; *see also* N.T., 10/25/22, at 19 (trial court concluding same). Police did not threaten or coerce Appellant, *see* N.T., 10/25/22, at 13, 15, and did not promise him anything. *Id.* Appellant's consent is objectively valid. Accordingly, the trial court did not err in denying Appellant's suppression motion. Appellant's first and second issues lack merit.

In his third issue, Appellant claims the trial court abused its discretion by denying his post-trial motion for a new trial challenging the weight of the evidence, where the Commonwealth failed to prove Appellant possessed contraband. *See* Appellant's Brief at 19-23. According to Appellant, he

> clearly did not have actual possession of the narcotics, because they were found in a safe and not on his person. Likewise, Appellant was not in constructive possession of the drugs, because the Commonwealth failed to exclude [] Brown as the owner of the safe and the narcotics found within. In fact, [] Brown is far more likely to be the owner of the safe and the drugs, because the safe was found in her home and in her bedroom. The Commonwealth's only link between the Appellant and the safe was Officer Richter's testimony [that] Appellant gave him the combination to the safe. However, Appellant could easily have learned the combination from the safe's owner, [] Brown….

*Id.* at 22.

Our standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Smith*, 146 A.3d 257, 264-65 (Pa. Super. 2016).

In order for an appellant to prevail on a challenge to the weight of evidence, he or she must establish that the evidence supporting a conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." *Id.* at 265 (citation omitted). "The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none, or some of

the evidence and to determine the credibility of the witnesses."
***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

Where, as here, a defendant did not have actual possession of the contraband, the Commonwealth was required to establish that he or she constructively possessed it. ***See Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018) (noting that in contraband possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation and quotation marks omitted); ***see also Commonwealth v. Johnson***, 26 A.3d 1078, 1094 (Pa. 2011) (stating that "circumstantial evidence may be used to establish constructive possession of the [contraband]."). It is possible for two people to have joint constructive possession of an item of contraband. ***Commonwealth v. Sanes***, 955 A.2d 369, 373 (Pa. Super. 2008). However, a defendant's mere presence at the scene does not establish constructive possession of contraband. ***Commonwealth v. Vargas***, 108

- 12 -

A.3d 858, 869 (Pa. Super. 2014) (*en banc*); ***see also Parrish***, 191 A.3d at 37 (stating that the location and proximity of an actor to the contraband alone is not conclusive of guilt).

Instantly, the trial court opined it did not abuse its discretion in rejecting Appellant's weight claim:

> At trial, Officer [] Richter testified that the safe was found out in the open in the [master] bedroom, and that Appellant gave officers the combination to unlock the safe in which the drugs were found. N.T. Criminal Jury Trial Proceedings, 3/8/23 at 54-55, 73. Appellant's testimony at trial directly contradicted this, as he testified that [] Brown gave officers the combination, and that although he did sleep in the master bedroom, he had never seen the safe, did not know anything about it, and had no idea what was in it. ***Id.*** at 79, 81-82. Here, **the jury was free to assess the credibility of the witnesses, and so it was free to believe Officer Richter instead of Appellant**. Furthermore, the Commonwealth was required only to establish beyond a reasonable doubt that Appellant possessed contraband, which **did not necessarily require excluding the possibility that someone else may also have possessed it**. In fact, the jury was instructed that, under the law, more than one individual may possess an item:
>
> > Two or more persons may have joint possession of a controlled substance provided each has the intent to exercise joint control over that substance and that each has the power to control it. Each of the joint possessors is regarded as having possession of the substance for purposes of the criminal law.
>
> ***Id.*** at 94[; ***see also Sanes***, ***supra*** (same)]. Based on testimony, the jury reasonably could have concluded that Appellant indeed was aware of the safe and its contents and had the power to control them.

Trial Court Opinion, 5/25/23, at 4-5 (emphasis added).

Our review discloses record support for the trial court's foregoing reasoning, *see id.*, and we discern no abuse of its discretion in rejecting Appellant's weight claim. It was within the jury's purview to find that Appellant possessed the contraband, and to discredit Appellant's testimony to the contrary. We decline Appellant's invitation to act as fact-finder, reweigh the evidence, and disturb credibility findings based on a cold record. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. **The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record**." (emphasis added; citations omitted)); *see also Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) ("One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence…." (citation omitted)). Appellant's third issue does not merit relief.

Appellant next claims the trial court erred in qualifying Officer Richter as an expert in the field of drug investigation, over Appellant's objection. *See* Appellant's Brief at 24-26. Appellant emphasizes it is undisputed that Officer Richter had never testified as an expert before Appellant's trial. *Id.* at 24. Appellant suggests that qualification of Officer Richter as an expert was unnecessary and duplicative, where the prosecution had already presented

- 14 -

expert testimony with respect to the field of drug investigation from Detective Holland. *Id.* According to Appellant, "Detective Holland is by far the more experienced of the two officers, and he was able to answer all of the questions concerning the narcotics trade." *Id.* at 25. Appellant asks this Court to grant him a new trial. *Id.* at 26.

The "admission of expert testimony is a matter for the trial court, and will not be disturbed absent an abuse of discretion." ***Commonwealth v. Walker***, 92 A.3d 766, 772 (Pa. 2014) (citation omitted). An abuse of discretion

> is not merely an error in judgment, but if in reaching a conclusion the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Id.* (citation and quotation marks omitted).

Our Supreme Court has stated expert testimony "is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training knowledge, intelligence and experience." ***Commonwealth v. Poplawski***, 130 A.3d 697, 718 (Pa. 2015) (citation and quotation marks omitted). With respect to the scope of expertise, our Supreme Court has

> recognized that the standard for qualifying as an expert is a liberal one and the witness need only have any reasonable pretension to specialized knowledge on the subject matter under investigation and the weight to be given to the expert's testimony is for the factfinder.

*Commonwealth v. Jones*, 240 A.3d 881, 890 (Pa. 2020) (citation and quotation marks omitted); *see also Commonwealth v. Taylor*, 209 A.3d 444, 450 (Pa. Super. 2019) (stating an expert "witness need not possess all of the knowledge in a given field" (citation and quotation marks omitted)). It is within the purview of the factfinder to consider the purported lack of experience in weighing an expert's opinion. *Taylor*, 209 A.3d at 450.

Instantly, the trial court opined it properly overruled Appellant's objection to the qualification of Officer Richter as an expert in the field of drug investigation:

> The number of times a witness has previously offered expert testimony may be considered among his other qualifications, but as this court observed at trial, every witness recognized as an expert will have a first time to testify in that capacity. N.T. Criminal Jury Trial Proceedings, 3/8/23 at 47. **The standard is whether a witness is sufficiently qualified under the Rules of Evidence, not whether he previously has been recognized as an expert or whether another expert witness also offers testimony**.
>
> Officer Richter testified [at Appellant's trial] that he had been a police officer for over five (5) years. *Id.* at 38. He stated he had been employed by the Fayette County District Attorney's Office for the Drug Task Force since 2021, to which he dedicated between 16 and 24 hours per month. *Id.* at 40. He had over one hundred hours in narcotics training from the Northeast Counterdrug Task Force and was certified in testing drugs in the field …. *Id.* at 41-42. He had personally been the lead investigator on ten drug cases per year. *Id.* at 42. As this court stated at trial:
>
>> The court finds based on Officer Richter's hundreds of investigations of possession of controlled substances, based on his experience as a police officer for five years and a member of the drug task force wherein he investigates an estimated ten cases a year of possession

> with intent to deliver[,] based on his training and experience the court will declare him an expert in the field of drug investigation.
>
> *Id.* at 47. There was ample evidence that Officer Richter's training and experience was sufficient to qualify him as an expert, and this court's recognition was granted appropriately, irrespective of the testimony of any other expert witness.

Trial Court Opinion, 5/25/23, at 5-6 (emphasis added; some capitalization modified). Again, the record and the law supports the trial court's reasoning, *see id.*, and we discern no abuse of its discretion in overruling Appellant's objection to the qualification of Officer Richter as an expert. Appellant's fourth issue lacks merit.

In Appellant's final issue, he argues the trial court erred in overruling the defense's objection to Officer Richter's trial testimony with respect to the "legal definitions of possession with intent to distribute and constructive possession." Appellant's Brief at 27. Appellant claims these definitions are "beyond the scope" of Officer Richter's experience, and complains, "as the arresting officer, his explanation of these legal terms most favored the Commonwealth." *Id.* at 28.

An appellate court "may reverse the trial court's ruling regarding the admissibility of lay-witness testimony only upon an abuse of discretion."[5] *Commonwealth v. Wenzel*, 248 A.3d 540, 549 (Pa. Super. 2021).

---

[5] Here, Officer Richter was not testifying in his capacity as an expert in the field of drug investigation when he testified about the general legal concept of possession.

- 17 -

This Court has clarified the difference between lay and expert testimony:

[T]he nature of the experiences that could form the opinion's basis ... determines whether the testimony is lay or expert opinion. So, expert testimony is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have. ...[T]his distinction can be a difficult one. To be sure, this is particularly the case when the witness is a police officer.

***Commonwealth v. Manivannan***, 186 A.3d 472, 485 (Pa. Super. 2018)

(citations, emphasis, quotation marks and brackets omitted).

With respect to lay testimony, the Pennsylvania Rules of Evidence provide:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Instantly, the following exchange occurred at trial during the prosecution's direct examination of Officer Richter:

Q. So you didn't actually see [Appellant] sell drugs?

A. That is correct.

Q. [] But you still filed these charges [against Appellant] for possession with intent to deliver [f]entanyl?

A. Yes, ma'am.

- 18 -

Q. Why?

A. So possession with intent it is not only just possession with intent to distribute but it is also with intent to package and … disseminate. This amount [of drugs seized] indicates that [Appellant] had the absolute intent to distribute the [f]entanyl [found] inside the safe. The amount alone. The packaging alone … it's over 400 baggies of [f]entanyl that [Appellant] would be able to disseminate to users.

N.T., 3/8/23, at 70.

Shortly thereafter, the prosecution questioned Officer Richter with respect to possession of contraband:

Q. Now, in your experience and training have you come across instances where more than one person could be in possession of an illegal substance?

A. Yes, ma'am.

Q. [] Can you talk to the jury a little bit about that?

A. In this case you have [a] household, everyone in the household is responsible for what is in the household as adults. You can also run across that [situation] in [] vehicles. If you are in a vehicle with somebody[,] say a passenger and … no one is taking claim that these are my drugs[,] and everyone is going to say that [the contraband] was just found in the vehicle[,] everybody in the vehicle is considered to have possession through constructive possession laws in P[]A.

*Id.* at 72. Appellant's counsel objected "on the grounds that [it is the trial court's] job to give the jury the law, not the police officer." *Id.* The trial court overruled the objection. *Id.* at 73.

After the conclusion of testimony, the trial court issued instructions to the jury on the law with respect to, *inter alia*, possession generally, joint constructive possession, possession of a controlled substance, and PWID. *Id.*

at 93-98. Additionally, the trial court instructed the jury about the difference between expert and lay testimony, *id.* at 98-99, and stated, "regular witnesses are not allowed to express opinions about matters that require special knowledge or skill." *Id.* at 99.

In its opinion, the trial court rejected Appellant's instant claim:

Officer Richter was asked [by the prosecution] to describe his experience, and, as a law enforcement officer, **some familiarity with basic Pennsylvania legal principles is required in order to effectively perform his duties. This would include familiarity with what constitutes "possession."** Furthermore, even if this testimony were deemed [*sic*] as offering a legal conclusion that the witness was not competent to make, it did not prejudice Appellant in any way, since prior to the jury's deliberation, this [c]ourt gave clear instruction on the law as it relates to joint possession and constructive possession. [N.T., 3/8/23,] at 94.

Trial Court Opinion, 5/25/23, at 7 (emphasis added).

Our review discloses record and legal support for the trial court's foregoing reasoning. *See id.* Contrary to Appellant's claim, the trial court did not err in overruling the defense's objection to Officer Richter's testimony.[6]

_____

[6] Even if, *arguendo*, the trial court erred, such error was harmless. "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error is harmless." **Commonwealth v. Northrip**, 945 A.2d 198, 203 (Pa. Super. 2008) (citation omitted); **see also Commonwealth v. Bieber**, 283 A.3d 866, 877 (Pa. Super. 2022) ("Even when evidence is wrongfully admitted, … such error is subject to harmless error analysis."). "An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007); **see also Commonwealth v.**
*(Footnote Continued Next Page)*

*See Bieber*, 283 A.3d at 878 (upholding trial court's overruling defense objection to testimony by police officer on direct examination by the prosecution, wherein the officer recited language from a Pennsylvania statute, and stating "[r]ecitation of the pertinent text of the statute does not constitute 'specialized knowledge' within the meaning of Rule 701(c)," and does not constitute improper legal opinion); *cf. Commonwealth v. Harper*, 230 A.3d 1231, 1242 (Pa. Super. 2020) (holding trial court erred in admitting purported lay testimony from police officer regarding whether gunshot wound was self-inflicted, and stating the "testimony was beyond the scope of lay testimony permitted by Rule of Evidence 701(c). An opinion that a gunshot wound was self-inflicted would require specialized expert medical and forensic training. *See* Pa.R.E. 702(c)."). Appellant's fifth issue lacks merit.

As none of Appellant's issues have merit and we discern no error or abuse of the trial court's discretion, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

*Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) ("for a ruling on evidence to constitute reversible error, **it must have been harmful or prejudicial** to the complaining party." (emphasis added; citation omitted)). Our review discloses that the evidence overwhelmingly established Appellant's guilt, and he was not prejudiced by Officer Richter's testimony in question. *See* Trial Court Opinion, 5/25/23, at 7 (finding Officer Richter's testimony in question "did not prejudice Appellant in any way"); *Jackson*, *supra*. Further, as discussed above, the trial court thoroughly instructed the jury as to the legal principles related to possession. *See* N.T., 3/8/23, at 93-98. "It is presumed the jury follows [a trial] court's instructions." *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2023